GRAVES LAW OFFICE P.C.
Philip J. Graves (SBN 153441)
pgraves@graveslawpc.com
Kevin I. Shenkman (SBN 223315)
kshenkman@graveslawpc.com
James Ahn (SBN 243335)
jahn@graveslawpc.com
Fredricka Ung (SBN 253794)
fung@graveslawpc.com
12121 Wilshire Blvd., Suite 775
Los Angeles, California 90025
Telephone: (310) 295-6500
Facsimile: (310) 295-6501

Attorneys for Defendant
ATHENA COSMETICS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ALLERGAN, INC., a Delaware corporation, and MURRAY A. JOHNSTONE, M.D., an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CAYMAN CHEMICAL COMPANY, a Colorado corporation; JAN MARINI SKIN RESEARCH INC., a California corporation; ATHENA COSMETICS, INC., a Nevada corporation; ATHENA BIOSCIENCE, LLC, a limited liability company; INTUIT BEAUTY, INC., a Nevada corporation; PHOTOMEDEX, INC., a Delaware corporation; PROCYTE CORPORATION, a Washington corporation; COSMETIC ALCHEMY, LLC, a limited liability company; and GLOBAL MDRx, a Nevada corporation,<br><br>Defendants. | CASE NO. SACV07-1316 JVS (RNBx)<br><br>Honorable Robert N. Block<br><br>**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ATHENA COSMETICS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM PLAINTIFF ALLERGAN, INC.**<br><br>Discovery Cutoff: August 7, 2009<br>Expert Cutoff:   October 16, 2009<br>Pretrial Conf.:   January 11, 2010<br>Trial Date:        January 19, 2010<br><br>**HEARING:**<br>Date:        February 10, 2009<br>Time:        9:30 a.m.<br>Courtroom: 6D |

## I. INTRODUCTION

Allergan's opposition to Athena's motion to compel is simple – in a nutshell, Allergan argues that it has told Athena that its theories and defenses in this case are meritless, so Athena should not be permitted to take discovery to support those defenses. For example, while Allergan acknowledges that the parties dispute whether the claims of the patent are limited to application of the subject drugs *for the purpose of promoting hair growth*, Allergan argues that the scope of discovery in this case should be governed only by its interpretation of the claims. On that basis alone, Allergan argues that it should not be required to produce documents related to two key prior art drugs – Xalatan and Lumigan.

But that is simply not how discovery works. Athena is entitled to take discovery on its defenses properly pled in its Answer. In the Joint Stipulation, Athena shows how each category of documents it seeks is likely to lead to the discovery of admissible evidence. Allergan, on the other hand, has not shown any compelling reason why it should be entitled to hide those documents and impede Athena's defense of this case. Therefore, this Court should order Allergan to produce requested documents.

Further, Athena is entitled to the production of those documents *promptly*. While Allergan notes in the Joint Stipulation that, through the course of discussions between counsel, it agreed to produce several categories of documents, Allergan still has yet to produce those documents. During those conversations in late December, Allergan's counsel stated that those documents would produced within "a couple weeks." However, Allergan has produced nothing more than what it provided months earlier.

## II. ARGUMENT[1]

---

[1] For the first time in the Joint Stipulation, Allergan agreed to produce any Xalatan labels in its possession, custody, or control. Athena nonetheless requests that this Court order that those Xalatan labels be produced. Therefore, only four categories of documents remain at issue:

[Footnote continued on next page]

### A. Documents Relating to Clinical Trials of Xalatan and Lumigan

Xalatan and Lumigan are at the heart of this case – that much is undisputed. Yet Allergan refuses to produce documents related to these two important drugs. Instead, Allergan asks this Court to force Athena to wait even longer for Judge Selna to rule on claim construction before getting the documents it is entitled to in this litigation. Allergan, of course, cites no authority for the proposition that a party's discovery obligations should be delayed until the court rules on the scope of a patent. Nor did Allergan agree to wait for the production of Athena's documents, which this Court ordered be produced by December 31, 2008 (which they were).

Athena has shown in the Joint Stipulation exactly how the clinical trials of Xalatan and Lumigan are relevant to this case, and what Athena expects to find in those documents. Allergan has not, on the other hand, shown why these documents should not be produced. Therefore, this Court should order that Allergan's documents relating to clinical trials of Xalatan and Lumigan be produced promptly.

### B. Court Filings, Communications Between Counsel, and Alleged Prior Art in *Allergan v. Pharmacia, et al.*, Case No. 01-141 in the U.S. Dist. Ct. in Delaware

As discussed in the Joint Stipulation, *Allergan v. Pharmacia, et al.*, Case No. 01-141 in the U.S. Dist. Ct. in Delaware ("Pharmacia case") involved similar patents, issues, and drugs as the present litigation. Most importantly, the Pharmacia case also involved Allergan, one of the plaintiffs in this case. It is clear from the documents

---

[Footnote continued from previous page]
- Documents relating to clinical trials of Xalatan and Lumigan;
- Court filings, communications between counsel, and alleged prior art in *Allergan v. Pharmacia, et al.*, Case No. 01-141 in the U.S. Dist. Ct. in Delaware;
- Communications with defendants in this litigation that have settled with Allergan, or any other licensees, regarding the patents in suit; and

Communications with doctors regarding Latisse which reference hair.

2

that case that Athena has obtained, that Allergan took positions in that case very different from the positions it now takes in this case.

For example, as discussed in the Joint Stipulation, Allergan took a position on the meaning of the term "$PGF_{2\alpha}$ derivative" as "A C1 alkyl ester of $PGF_{2\alpha}$," while taking a contradictory to the position in this case that "$PGF_{2\alpha}$ derivative" is "a PGF compound with an ester group or a carboxylic acid group at the C1 position and a double bond at the C5 position, which may or may not have a double bond at the C13 position and may or may not have a ring structure on the omega chain." (*See* Ahn Supplemental Decl. ¶2 Ex. 11; Ahn Decl. ¶ 3, Ex. 4).

Similarly, based on documents recently obtained by Athena's counsel, Allergan also took a position in the Pharmacia case regarding whether a preamble in a patent claim is a claim limitation in itself, that is contradictory to what it argues in the present case. Specifically, in the Pharmacia case, Allergan apparently argued that the preamble language in the patents at issue in that case, which is similar to that in the patents at issue in this case, was not limiting. (*See* Ahn Supplemental Decl. ¶ 4, Ex. 12). As Allergan concedes in the Joint Stipulation, the issue of whether the claim preambles of the patents at issue in the present case are limiting is important to the outcome of this case, and indeed may be dispositive.

Through just the publicly available documents, Athena has shown that Allergan is taking two claim construction positions in this case that are contradictory to what it argued in the Pharmacia case. There may be many more contradictions in Allergan's arguments – only production of the documents in that case will tell.

Finally, Allergan's argument that an order from this Court compelling Allergan to produce documents from the Pharmacia case would "ignore the Protective Order" in that case is nonsensical. In the Pharmacia case, nearly everything was filed under seal, not because of confidentiality concerns, but rather because the presiding judge's practice was to have everything filed under seal in patent cases, regardless of whether confidential information was included in those filings. (Ahn Decl. ¶ 3, Ex. 4). In fact,

3

the Protective Order does not even cover those documents filed under seal except to the extent that they contain confidential information and were designated appropriately. (Ahn Supp. Decl. ¶ 5, Ex. 13). While some of the documents filed under seal in the Pharmacia case may contain confidential information, that information can be redacted as Athena's counsel suggested, and there would be no violation of the Protective Order in that case. (Shenkman Decl. Ex. 9). Allergan is further free to mark these documents "confidential" or "highly confidential – attorneys' eyes only" to invoke the protections of the Protective Order entered in this case.

### C. Communications with Defendants in This Litigation that have Settled with Allergan, or Any Other Licensees, Regarding the Patents in Suit

Allergan argues that its communications with the defendants in this case, and any other licensees of the patents in suit, are not *discoverable* pursuant to Fed. R. Evid. 408. But Fed. R. Evid. 408 has nothing to do with discoverability, it only speaks to admissibility. Allergan has not cited, and Athena is unaware of, any authority that suggests that Fed. R. Evid. 408 renders communications between parties to a litigation, much less parties to a contract, exempt from discovery. This is especially true where, as here, the communications are not anticipated to be offered to show the validity or amount of the particular claim that was settled, but rather that of a different claim.

Further, in the Joint Stipulation, Athena identifies at least two purposes for which the requested communications are admissible, despite Fed. R. Evid. 408 – showing patent misuse and the amount of a reasonable royalty. Indeed, patent licenses, even when reached in settlement of litigation, and the negotiations leading up to those licenses, can form the basis of a patent misuse defense. *See United States Gypsum v. National Gypsum*, 352 U.S. 457, 465 (1957). Similarly, past licenses are highly relevant to the determination of a reasonable royalty. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 854 (Fed. Cir. 2006).

In order to obscure the probative value of past licenses to the determination of a reasonable royalty measure of damages, Allergan cites *Hanson Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983) for the proposition that licenses reached "after the infringement had begun and litigation was threatened or probable" are not "evidence of an *established* royalty." But the existence of an "established royalty" is only one of several factors to be considered in determining a "reasonable royalty." *See Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

This is precisely why the United States District Court for the Northern District of New York in *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 89637 (N.D.N.Y. January 31, 2007) addressed, and rejected, precisely the same argument that Allergan makes here. Specifically, in *Cornell Research*, the court ruled that Fed. R. Evid. 408 did not preclude the admission of prior licenses of, or attempts to license, the patent at issue because those licenses, and attempts to license, were being offered to establish the appropriate royalty, not to determine liability. *Id* at *198-199 ("I reject plaintiffs' assertion that the question of whether it has ever licensed, or attempted to license, servers or workstations in the past under the '115 patent is irrelevant to the reasonable royalty inquiry."). In fact, in making this determination, the *Cornell Research* court cited the very case cited by Allergan here – *Hanson*, 718 F.2d at 1078.

**D. Communications with Doctors Regarding Latisse Which Reference Hair**

There is no question that Allergan's new drug, Latisse, is highly relevant to this case. Allergan does not dispute this point, but rather complains of the volume of documents that it possesses regarding Latisse.

Allergan should not be heard to complain about this. It has only itself to blame for the volume of documents it has created regarding Latisse. As discussed in the Joint Stipulation, the volume of documents, created by Allergan, should not be cause to excuse Allergan from its discovery obligations.

Dated: January 27, 2009

PHILIP J. GRAVES
KEVIN I. SHENKMAN
JAMES AHN
FREDRICKA UNG
GRAVES LAW OFFICES


By: /s/ Kevin Shenkman
        Kevin Shenkman

Attorneys for Defendant ATHENA COSMETICS, INC.