GRAVES LAW OFFICE, P.C.
Philip J. Graves (SBN 153441)
pgraves@graveslawpc.com
John Walton (SBN 130666)
jwalton@graveslawpc.com
Pablo Arredondo (SBN 241142)
parredondo@graveslawpc.com
James Ahn (SBN 243335)
jahn@graveslawpc.com
Monique Cho (SBN 251949)
mcho@graveslawpc.com
Fredricka Ung (SBN 253794)
fung@graveslawpc.com
Shen Li Khong (SBN 261326)
skhong@graveslawpc.com
12121 Wilshire Blvd., Ste. 775
Los Angeles, California 90025
Telephone:   (310) 295-6500
Facsimile:    (310) 295-6501

Attorneys for Defendants
ATHENA COSMETICS, INC. and
PHARMA TECH INTERNATIONAL, INC.

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLERGAN, INC., a Delaware corporation, MURRAY A. JOHNSTONE, M.D., an individual; and DUKE UNIVERSITY<br><br>Plaintiffs,<br><br>v.<br><br>ATHENA COSMETICS, INC., a Nevada corporation; ATHENA BIOSCIENCE, LLC, a limited liability company; COSMETIC ALCHEMY, LLC, a limited liability company; GLOBAL MDRx, a Nevada corporation; COSMETIC TECHNOLOGIES, INC., a California corporation; PHARMA TECH INTERNATIONAL, INC., a New Jersey corporation; and DMI, a New Jersey corporation<br>Defendants. | *Lead Case*:<br>CASE NO. SACV07-1316 JVS (RNBx)<br><br>*Consolidated with*:<br>CASE NO. SACV09-0328 JVS (RNBx)<br><br>**ATHENA COSMETICS, INC.'S OPPOSITION TO ALLERGAN INC.'S MOTION TO DISMISS ATHENA'S THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH COUNTERCLAIMS** |

1  GRAVES LAW OFFICE, P.C.
2  Philip J. Graves, Esq. (SBN 153441)
   pgraves@graveslawpc.com
3  John R.

4

5              **IN THE UNITED STATES DISTRICT COURT**

6              **CENTRAL DISTRICT OF CALIFORNIA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page**

3   I.    INTRODUCTION………………………………………………………………………1

4

5   II.   LEGAL STANDARDS…………………………………………...……………………2

6

7   III.  ARGUMENT…………………………………………………………………………2

8         A.    Athena's Antitrust Counterclaims Are Adequately

9               Pleaded……………………………………………………..…………………...2

10              1.    Athena's has Adequately Alleged Anticompetitive

11                    Conduct……..…………………….........................................3

12                    a.    Athena Has Pleaded Sham Litigation…………….………..4

13                          i.    The Facts Pleaded Demonstrate the Suit Was

14                                Objectively Baseless……..…………………………4

15                          ii.   Allergan's Assertion of the '105 Patent is Made in

16                                Bad Faith……..……………………………………...4

17                          iii.  Allergan's Assertion of the '404 Patent Was Made

18                                in Bad Faith…………..……………………………...5

19                    b.    Allergan's False and Disparaging Statements Are

20                          Anticompetitive Conduct..………..…………………………8

21              2.    Athena Alleged "Monopoly Power" and "Dangerous Probability

22                    of Success"……..……………………..........................................11

23                    a.    Athena's Single-Market Allegations.……….………….13

24                          i.    Athena Has Adequately Alleged Via Circumstantial

25                                Evidence That Allergan Has Monopoly Power in

26                                the PGEEP Market……………………………………13

27                          ii.   Athena Has Adequately Alleged Via Direct

28                                Evidence of Supracompetitive Pricing That

Allergan Has Monopoly Power in the PGEEP

Market……………………………………………...15

         b.    Athena's Dual-Market Allegations……..……………16

   3.   Athena's Adequately Alleged Antitrust Injury…..…………20

B.   Athena Has Stated a Claim for Unfair Competition Under the

Lanham Act…..……………………………………………………22

   1.   Rule 9(b) Does Not Apply to Athena's Unfair Competition

Claim..……………..…………….............................22

   2.   The Unfair Competition Claim Meets Rule 9's

Pleading Standard…………………………………………..22

   3.   Athena Should be Granted Leave to Amend…………………25

IV.   CONCLUSION………………………………………………………25

1                        **TABLE OF AUTHORITIES**

2                            **Cases**

3  *Atl. Ritchfield Co. v. USA Petroleum, Co.,*

4  495 U.S. 328, 344 (1990)……………………………………………………….21

5  *Amgen, Inc. v. F. Hoffman-La Roche, Ltd.,*

6  480 F. Supp. 2d 462, 468-69 (D. Mass. 2007)………………………………….22

7  *Am. Academic Supplier, Inc. v. Beckley-Cardy, Inc.,*

8  922 F.2d 1317, 1319 (7th Cir. 1991)…………………………………………15, 16

9  *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich*

10  *Legal & Prof'l Publ'ns., Inc.,*

11  108 F.3d 1147, 1151 (9th Cir. 1997)…………………………………….8, 9, 10, 11

12  *Atlas Powder Co. v. IRECO Inc.,*

13  190 F.3d 1342 (Fed. Dir. 1999)…………………………………………………6

14  *Alternative Electrodes, LLC v. Empi, Inc.,*

15  597 F.Supp.2d 322, 332 (E.D.N.Y. 2009)………………………………………8

16  *Apotex USA, Inc. v. Merck & Co., Inc.,*

17  254, F.3d 1031, 1035 (Fed. Cir. 2001)…………………………………………7

18  *Bell Atl. Corp. v. Twombly,*

19  550 U.S. 544, [ ] (2007)…………………………………………………………2

20  *Bly-Magee v. California,*

21  236 F.3d 1014, 1016 (9th Cir. 2001)……………………………………………25

22  *Bristol-Myers Squibb, Co. v. Ben Venue Labs.,*

23  246 F.3d 1368, 1376 (Fed. Cir. 2001)…………………………………………6

24  *Broadcom Corp. v. Qualcomm, Inc.,*

25  501 F.3d 297 (3d Cir. 2007)…………………………………………………17, 18

26  *Brosnan v. Tradeline Solutions, Inc.,*

27  2009 U.S. Dist. LEXIS 48262……………………………………………………23

28

*Brown Shoe Co. v. United States,*
370 U.S. 294, 325 (1962)……….…………………………………………...13

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477, 489 (1977)……….…………………………………………...21

*Catch Curve, Inc. v. Venali, Inc.,*
519 F. Supp. 2d 1028, 1037 (C.D. Cal. 2007)…………………………….....2

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,*
690 F.2d 1240, 1253 (9th Cir.1982)………………………………………...3

*Coalition for ICAAN Transparency, Inc. v. Verisign, Inc.,*
567 F.3d 1084, 1093 (9th Cir. 2009)…………………………………………8

*Conceptual Eng'g Assocs., Inc. v. Aelectronic Bonding, Inc.,*
714 F.Supp. 1262, 1269 (D.R.I. 1989)…………………………….………10

*In re Cruciferous Sprout Litig.,*
301 F.ed 1343 (Fed. Cir. 2002)……………………………….……………6

*Corley v. Rosewood Care Ctr., Inc.,*
142 F.3d 1041, 1051 (7th Cir. 1998)……………………………………….23

*Cost Mgmt. Svcs. v. Washington Natural Gas Co.,*
99 F.3d 937, 950 (9th Cir. 1996)………………………………………….2, 3

*C.R. Bard, Inc. v. M3 Systems, Inc.,*
157 F.3d 1340, 1368 (Fed.Cir.1998)……………………………….………3

*CVD, Inc. v. Raytheon Co.,*
769 F.2d 842, 858 (1st Cir. 1985)………………………………………….22

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH.,*
524 F.3d 1254, 1262 (Fed. Cir. 2008)……………………………….………5

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336, 347 (2005)……………………………………………………2

*Earnest W. Hahn, Inc. v. Codding,*
615 F.2d 830, 835 (9th Cir. 1995)…………………………….……………8

iv

1

2   *E. Portland Imaging Ctr., P.C. v. Providence Health Sys.-Or.,*

3   2008 U.S. App. LEXIS 10984 (9th Cir. May 20, 2008)…………………………...18

4   *Erickson v. Pardus,*

5   551 U.S. 89, 93 (2007)…………………………………………………………………2

6   *FilmTec Corp. v. Hydranautics,*

7   67 F.3d 931, 938 (Fed. Cir. 1995)……………………………………………...4, 5

8   *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.,*

9   627 F.2d 919, 924-25 (9th Cir. 1980)…………………………………………...13

10  *IGT v. Alliance Gaming Corp.,*

11  2007 WL 911773………………..…………………………………………...14

12  *Illinois Tool Works v. Independent Ink, Inc.,*

13  547 U.S. 28, 42-43 (2006)…………………………………………………...19

14  *Image Technical Servs., Inc. v. Eastman Kodak Co.,*

15  125 F.3d 1195, 1202  (9th Cir. 1997)..……………………………………...12, 14

16  *Intel Corp. v. VIA Technologies.,*

17  No. C 99-03062, 2001 WL 777085……………………………………………4, 5

18  *Jackson v. Carey,*

19  353 F.3d 750, 758 (9th Cir. 2003)………………………………….………..2

20  *In re Keegan Mgmt. Co. Sec. Litig.,*

21  78 F.3d 431, 435 (9th Cir. 1996)…..………………………………………….5

22  *Kottle v. N.W. Kidney Centers,*

23  146 F.3d 1056, 1060 (9th Cir.1998)…………………………………….……3

24  *Lopez v. Smith,*

25  203 F.3d 1122, 1127 (9th Cir. 2000)………………………………………….2, 25

26  *Mercy-Peninsula Ambulance, Inc. v. County of San Mateo,*

27  791 F.2d 755 (9th Cir. 1986)…………………………………………..18, 19

28  *MGA Entertainment, Inc.,*

v

2005 WL 5894689……………………..………………………….……..9

*Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs Div. of/and Am.*

*Handgards, Inc. v. Ethicon, Inc.,*

743 F.2d 1282, 1296-1297 (9th Cir. 1984)……………………………...22

*Home Prods. Corp.,*

850 F.2d 904, 916 (2d Cir. 1998)…………………………………….…..9

*Netflix, Inc. v. Blockbuster, Inc.,*

2006 WL 2458717………………..…………………………………….13

*Newcal. Indus., Inc. v. Ikon Office Solution,*

513 F.3d 1038, 1045 (9th Cir. 2008)……………………………………....12

*New Idea Farm Equip. Corp. v. Sperry Corp.,*

916 F.2d, 1561, 1566 (Fed. Cir. 1990)………………………………..……..7

*In re Omeprazole,*

483 F.3d 1364 (Fed. Cir. 2007)……………………………….…………..6

*Ostrofe v. H.S. Crocker Co., Inc.,*

740 F.2d 739, 751 (9th Cir. 1984)………………………………………….22

*PAE Gov't Services, Inc. v. MPRI, Inc.,*

514 F.3d 856, 858 (9th Cir. 2007)……………………………………….…..2

*Pom Wonderful, LLC v. Ocean Spray Cranberries, Inc.,*

2009 U.S. Dist. LEXIS 64108…………………………………………….22

*Portney v. CIBA Vision Corp.,*

593 F. Supp. 2d 1120 (C.D. Cal. 2008)……………………………………19

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*

508 U.S. 49, 60 (1993)…………………………………………….....3, 5, 7

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.,*

51 F.3d 1421, 1434 (9th Cir. 1995)….………………………12, 14, 15

*Schering Corp. v. Geneva Pharms., Inc.,*

339 F.3d 1373 (Fed. Cir. 2003)……………………………………………..6

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.,*

113 F.3d 405 (3d Cir. 1997)…..………………………………………………...20

*In re Wellbutrin SR Antitrust Litigation,*

Civil Action No. 04-5525, 2006 Dist. LEXIS 9687 (E.D. Pa. Mar. 9, 2006)………5

*Transcription Communs. Corp v. John Muir Health,*

2009 U.S. Dist. LEXIS 25151……………………………………………………..23

*TYR Sports Inc. v. Warnaco Swimwear Inc.,*

2009 WL 1769444……………………………………………………...10, 11

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.,*

676 F.2d 1291, 1308 (9th Cir. 1982)……………………………….………3

*Ultronics, Inc. v. Cox Cable of San Diego, Inc.,*

1991 WL 1302931……………………...………………………………….9, 10

*United States v. Chapman Univ.,*

2006 U.S. Dist. LEXIS 53686………………………………………………..24

*United States v. E.I. du Pont de Nemours & Co.,*

351 U.S. 377 (1956)………………………………………………………16

*United States v. Grinnell Corp.,*

284 U.S. 563, 570-71 (1966)…………………………………….3, 11, 15

*United States v. Microsoft,*

253 F.3d 34, 51 (D.C. Cir. 2001)…..……………………………………14

*Vess v. Ciba-Geigy Corp. USA,*

317 F.3d 1097, 1108 (9th Cir. 2003)…………………………………..24, 25

*Walgreen Co. v. AstraZeneca Pharm. L.P.,*

534 F.Supp. 2d 146 (D.D.C. 2008)…..……………………………………10

*Wastelands Water Dist. v. Firebaugh Canal,*

10 F.3d 667, 670 (9th Cir. 1993)…………………………………………2

*In re Warfarin Sodium Antitrust Litig.*

1998 WL 883469……………………………………………………..10, 15

1

2                                    **Statutes**

3    Clayton Act § 4, 15 U.S.C. § 15…………………………………………………20

4    Lanham Act, 15 U.S.C. § 1125…………………………………………………22

5    Sherman Act § 2 , 15 U.S.C. § 2 …………………………………2, 3, 14, 16, 19

6    35 U.S.C. § 102(b)………………………………………………...……………..6

7    35 U.S.C. § 102(g)……………………………………………………...…….…7

8    35 U.S.C. § 103……………………………………………………….…….…..6

9                                     **Rules**

10   Fed. R. Civ. P. 8(a)(2)……………………………………………………….…..2

11   Fed. R. Civ. P. 9(b)……………………………………….....2, 22, 23, 24, 25

12   Fed. R. Civ. P. 12(b)………………………………………………………….…..2

13   Fed. R. Civ. P. 12(b)(6)..……………………………………………………….…2

14                             **Other Authorities**

15   Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, ¶ 307 at 122 (3d ed.

16   2007)………………………………………………………………………………12

17   Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, ¶ 501 at 111 (3d ed.

18   2007)………………………………………………………………………………15

19   Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, ¶ 391a at 320 (3d ed.

20   2007)………………………………………………………………………………21

21   United States Department of Justice and Federal Trade Commission, Antitrust

22   Guidelines for the Licensing of Intellectual Property § 4.1.1 (1995)……………..20

23   Charles Alan Wright & Arthur R. Miller, *Federal Practice*

24   *and Procedure* § 1298 (3d ed. 2004)………………………………………………23

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    **INTRODUCTION**

Allergan's motion to dismiss Athena's antitrust counterclaims is an attempted sleight of hand designed to avoid litigating this case on the merits.  What is most compelling is what Allergan omits and disguises.  Allergan promises to show how Athena has failed to plead "anticompetitive conduct," "monopoly power" and "antitrust injury."  Yet upon inspection, its motion actually *admits* each element is properly pleaded.

For instance, *under Allergan's own proffered claim construction*, Allergan does not contend that Athena's RevitaLash product infringes the '105 Patent.  Nevertheless, for some two years Allergan has sued Athena under a patent it knows Athena does not infringe.  Allergan does not dispute these facts.  Allergan also does not dispute that it knew of the invalidating prior art to the '404 Patent cited by Athena, and that this prior art is invalidating.  Nor does Allergan dispute that either the '404 or '029 Patent is invalid over the other, yet is nonetheless asserted against Athena.  The consequence of Allergan's silence on these points is clear: Allergan has admitted that Athena adequately pleaded Allergan's anticompetitive conduct.

Allergan's omissions on monopoly power and antitrust injury are similarly telling.  Despite making much noise about pricing in its monopoly power and antitrust injury arguments, Allergan makes *no challenge* to Athena's (a) definition of a relevant market, (b) allegations concerning Allergan's dominant market share of that market, or (c) allegations regarding entry barriers – including Allergan's sham litigation campaign to protect that market – allowing Allergan to convert its dominant market share into exercised monopoly power.  As such, the motion actually does not challenge the legal sufficiency of the monopoly power allegations.

The same is true of Allergan's antitrust injury arguments, which again focus solely on pricing and omit *any* challenge to the fact that Athena has alleged injuries in lost revenue and litigation costs stemming from the *same conduct* by Allergan that has destroyed competition and reduced output market-wide.  Athena's litigation costs qualify as a barrier to entry, which is itself cognizable as antitrust injury, as Allergan admits.

**ATHENA COSMETICS, INC.'S OPPOSITION TO ALLERGAN INC.'S MOTION TO DISMISS
ATHENA'S THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH COUNTERCLAIMS**

1    With respect to Athena's Lanham Act unfair competition claim, Allergan's *sole*

2  argument is that the heightened pleading standard of Rule 9(b) applies and that Athena's

3  allegations somehow fall short.  It does not deny that a cause of action is stated, only that

4  allegations are not yet sufficiently specific.  Athena easily demonstrates that they are.

5                    ## II.    LEGAL STANDARDS

6    Rule 8(a)(2) requires only "a short and plain statement of the claim showing that

7  the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Ordinary pleading rules are not

8  meant to impose a great burden upon the plaintiff."  *Dura Pharms., Inc. v. Broudo*, 544

9  U.S. 336, 347 (2005).  "Specific facts are not necessary; the statement need only 'give the

10  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

11  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

12  544, [ ] (2007)).  The Court must accept as true all factual allegations in the complaint and

13  must draw all reasonable inferences from those allegations, construing the complaint in

14  the light most favorable to the plaintiff.  *Wastelands Water Dist. v. Firebaugh Canal*, 10

15  F.3d 667, 670 (9th Cir. 1993).  "[T]he Federal Rules of Civil Procedure do not authorize a

16  district court to adjudicate claims on the merits [on a Fed. R. Civ. P. 12(b) motion]; the

17  court may only review claims for legal sufficiency."  *PAE Gov't Services, Inc. v. MPRI,*

18  *Inc.*, 514 F.3d 856, 858 (9th Cir. 2007). Dismissal without leave to amend is appropriate

19  only when the Court is satisfied that the deficiencies of the complaint *could not possibly*

20  *be cured by amendment*.  *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citation

21  omitted); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

22                    ## III.    ARGUMENT

23  **A.    Athena's Antitrust Counterclaims Are Adequately Pleaded**

24    "In order to survive a motion to dismiss under Rule 12(b)(6), an antitrust complaint

25  'need only allege sufficient facts from which the court can discern the elements of an

26  injury resulting from an act forbidden by the antitrust laws.'"  *See Cost Mgmt. Svcs. v.*

27  *Washington Natural Gas Co.*, 99 F.3d 937, 950 (9th Cir. 1996) (citation omitted).  To

28  state a claim for monopolization under Section 2 of the Sherman Act, a claimant must

1  allege: (1) possession of monopoly power in the relevant market(s); (2) willful acquisition

2  or maintenance of that power; and (3) causal antitrust injury. *United States v. Grinnell*

3  *Corp.*, 284 U.S. 563, 570-71 (1966); *Cost Mgmt. Svcs.*, 99 F.3d at 949. To state a claim

4  for attempted monopolization under that same section, a claimant must allege: (1) specific

5  intent to control prices or destroy competition; (2) predatory of anticompetitive conduct;

6  (3) dangerous probability of success; and (4) causal antitrust injury. *See Cost Mgmt.*

7  *Svcs.*, 99 F.3d at 949-50. The elements of an attempted monopolization claim are

8  frequently interdependent "so that proof of one may provide circumstantial evidence or

9  permissible inferences of the other elements." *Twin City Sportservice, Inc. v. Charles O.*

10 *Finley & Co.*, 676 F.2d 1291, 1308 (9th Cir. 1982).

## 1.  Athena has Adequately Alleged Anticompetitive Conduct

12       "Conduct prohibited under antitrust law includes bringing suit to enforce a patent

13 with knowledge that the patent is invalid or not infringed, and the litigation is conducted

14 for anti-competitive purposes. In such events the antitrust immunity of *Noerr-Pennington*

15 ... does not apply to those who seek redress through judicial process." *C.R. Bard, Inc. v.*

16 *M3 Systems, Inc.,* 157 F.3d 1340, 1368 (Fed.Cir.1998) (internal citations omitted). Where

17 the alleged anti-competitive behavior consists of bringing a single sham lawsuit, the two

18 *findings* necessary are that: "(1) the lawsuit must be objectively meritless such that 'no

19 reasonable litigant could expect success on the merits and (2) it must be *found* that 'the

20 baseless lawsuit conceals an attempt to interfere directly with the business relationships of

21 a competitor.'" *Id.* (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.,*

22 *Inc.,* 508 U.S. 49, 60 (1993) ("*PRE*")); *see also Kottle v. N.W. Kidney Centers,* 146 F.3d

23 1056, 1060 (9th Cir.1998). Moreover, the Ninth Circuit has stated that "[w]hether

24 something is a genuine effort to influence governmental action, or a mere sham, is a

25 question of fact." *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690

26 F.2d 1240, 1253 (9th Cir.1982).

27

28

1    **a.  Athena Has Pleaded Sham Litigation**

2    **i.  The Facts Pleaded Demonstrate the Suit Was Objectively Baseless**

3    Athena sufficiently pleaded the requisite elements of sham litigation with factual

4    allegations in its SAC.  The allegations, accepted as true in the motion, demonstrate that

5    the patent infringement suits against at least Athena are both objectively baseless and

6    subjectively brought in bad faith within the meaning of *PRE*.

7    **ii.  Allergan's Assertion of the '105 Patent is Made in Bad Faith**

8    The facts alleged in the SAC demonstrate that Allergan's claim for patent

9    infringement of the '105 Patent against Athena is objectively meritless.  No reasonable

10   litigant could realistically expect success on the merits of the claim because Allergan itself

11   admits "the claims in the '105 patent . . . if properly construed, do not cover prostamides."

12   (SAC, ¶28; Docket No. 147 at 10).  The SAC further alleges that "the '105 Patent is not

13   and *has never* been infringed by Athena's RevitaLash and Hair by RevitaLash products."

14   (SAC, ¶28) (emphasis added).  Accordingly, the SAC does plead that Allergan lacked

15   even a scintilla of probable cause to assert infringement of the '105 Patent against Athena.

16   Allergan's argument that the litigation is not a sham because it is (also) asserting

17   the '404 Patent and '105 Patent against Athena "in the alternative" is too little too late:

18   The original Complaint filed on November 7, 2007 asserted *only* the '105 Patent against

19   Athena.  Irrespective of Allergan's current "alternative patent" theory, during the first six

20   months of the litigation, there was no "alternative" to the '105 Patent.  (*Allergan, Inc. v.*

21   *Cayman Chem. Co.*, Case No. CV07-1316, ("*Allergan I*") Complaint ¶¶21-24).  Having

22   no answer to this reality, Allergan ignores it and instead hopes that the assertion of the

23   '404 Patent retroactively immunizes the litigation under *Noerr-Pennington*.  (Pl. Br. at 9-

24   10).  It does not.  The court must determine "the reasonableness of the antitrust

25   defendant's litigation *when filed.*"  *FilmTec Corp. v. Hydranautics*, 67 F.3d 931, 938

26   (Fed. Cir. 1995).  Thus, Allergan cannot avoid the fact it instituted a sham legal

27   proceeding against Athena based on an objectively baseless claim for infringement of the

28   '105 Patent.  *See Intel Corp. v. VIA Technologies.*, No. C 99-03062, 2001 WL 777085, at

4

*5 (N.D. Cal. Mar. 20, 2001) (plaintiff who adds baseless claim to an otherwise bona fide suit, probably to obtain an additional strategic advantage, should not be immunized as that would effectively "eviscerate most of the sham litigation exception.").  Indeed, *In re Wellbutrin SR Antitrust Litigation*, Civil Action No. 04-5525, 2006 Dist. LEXIS 9687 (E.D. Pa. Mar. 9, 2006) emphasized that *PRE* makes clear that the "objectively baseless" determination depends on the reasonable expectations of the party bringing the alleged sham suit--the analysis should focus on "what the litigant knew or reasonably could have known at *the time the suits were filed*, not the results of the suits." *Id.* at *33-34 (emphasis added) (citing *PRE*, 508 U.S. at 61 n. 5).  Thus, the analysis "must be prospective not retrospective, and therefore should be limited to the law and facts as they existed *when decision to file was made*." *Id.* at *34 (citing *PRE*, 508 U.S. at 67).  Here, Athena has alleged that at the time Allergan initiated this proceeding, Allergan knew that the '105 Patent was not and had never been infringed by the Athena products.[1]  (SAC, ¶28).

### iii.  Allergan's Assertion of the '404 Patent Was in Bad Faith

Athena has alleged that the '404 Patent is invalid, and that Allergan's assertion of the '404 Patent against Athena is a sham.  (SAC, ¶¶27-30).  These allegations hold that Allergan's assertion of the '404 Patent is objectively baseless because no reasonable litigant could realistically expect success on the merits of validity in light of the prior art. *See PRE*, 508 U.S. at 60; *Filmtec Corp. v. Hydranautics*, 67 F.3d 931, 936 (Fed. Cir. 1995) ("The validity of the patent, including the manner in which the patent application

---

[1] Allergan's argument that the Court already rejected such allegations when it considered a motion for Rule 11 sanctions made by other defendants is a red herring.  First, Allergan conflates the standard for Rule 11 sanctions and the standard for pleading sham litigation.  A lawsuit is frivolous under Rule 11 only if it is "*both* baseless and made without a reasonable competent inquiry." *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996); *see also Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1262 (Fed. Cir. 2008) ("we have never stated that the Rule 11 standard is the same as the standard applied in the line of cases following *Professional Real Estate*.").  In its Rule 11 motion, Photomedex ignored the first Rule 11 element and argued only that sanctions were appropriate because Allergan and its counsel had failed to adequately investigate a claim of patent infringement before asserting the '105 on the parties.  (Docket Nos. 141 at 5-6 & 154 at 2-4).  The adequacy of Allergan's pre-filing investigation is not relevant here.  Second, Photomedex's Rule 11 motion was filed *after* Allergan asserted the '404 Patent against Photomedex and other Defendants.  Accordingly, this Court has only found Allergan's "alternative" argument not improper where *both* the '105 and '404 Patents has been asserted against a party.  (Docket No. 163).  As discussed above, however, there was no "alternative" to the '105 Patent during the first six months of the litigation.  Allergan initiated and continues to prosecution a sham infringement suit asserting the '105 Patent.

**ATHENA COSMETICS, INC.'S OPPOSITION TO ALLERGAN INC.'S MOTION TO DISMISS
ATHENA'S THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH COUNTERCLAIMS**

1  was prosecuted, will bear directly on the question of whether the patentee's suit is a sham

2  under the relevant legal test."). Athena has specifically identified invalidating prior art

3  such as JP H10-287532 (JP '532 Publication), U.S. Patent Nos. 6,160,129 ('129 Patent),

4  and 5,688,819 ('819 Patent). (SAC, ¶30).

5      A reasonable litigant would have understood that the JP '532 Publication and the

6  '129 Patent are invalidating prior art to the '404 Patent under 35 U.S.C. §§102(b) and 103,

7  and that these references expressly disclose each element of each asserted claim, *i.e.* the

8  application of prostaglandin PGF amides to mammalian skin to stimulate hair growth.

9  (Ex. A, JP '532 Publication, ¶¶ 7, 16, 22, 27; Ex. B, '129 Patent, 39:1-3, 20-25, 40:44 –

10 42:30). A reasonable litigant would also have understood that the '819 Patent discloses

11 the application of prostaglandin PGF amides to the eye and inherently to the skin, and that

12 practicing this prior art method would invariably stimulate hair growth. (Ex. C, '819

13 Patent, 3:9-8:7). Thus, the '819 Patent inherently anticipates all asserted claims of the

14 '404 Patent. *See Bristol-Myers Squibb, Co. v. Ben Venue Labs.*, 246 F.3d 1368, 1376

15 (Fed. Cir. 2001); *In re Omeprazole*, 483 F.3d 1364 (Fed. Cir. 2007) (new realization that a

16 prior art process created a separating layer did not render the prior art patentable);

17 *Schering Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373 (Fed. Cir. 2003) ("[I]nherent

18 anticipation does not require that a person of ordinary skill in the art at the time would

19 have recognized the inherent disclosure."); *In re Cruciferous Sprout Litig.,* 301 F.3d 1343

20 (Fed. Cir. 2002); *Atlas Powder Co. v. IRECO Inc.,* 190 F.3d 1342 (Fed. Cir. 1999).

21 Therefore, no reasonable litigant realistically could have expected success on the merits of

22 validity of the '404 Patent, and Athena's allegations in this regard clearly raise questions

23 of fact which must be resolved via discovery and trial.

24      Athena has also alleged, and it can be reasonably inferred, that Allergan asserts the

25 '404 Patent in bad faith to interfere directly with the business relationships of Athena

26 through this sham lawsuit, knowing that the '404 Patent is invalidated by the prior art.

27 (SAC, ¶¶27-30). Athena has alleged that Allergan was aware of each invalidating prior

28 art at the time of its assertion of the '404 Patent. (SAC, ¶30). Taken as true, these

1  allegations are sufficient to satisfy the subjective prong of the sham litigation standard

2  articulated in *PRE*.  *See PRE*, 508 U.S. at 60.

3       Furthermore, Athena has alleged that Allergan has initiated suits against Athena

4  claiming infringement of *both* the '404 and the '029 Patents despite its knowledge that

5  *one of these patents* is invalid as a matter of law.  Athena alleges that both the '404 and

6  '029 Patents claim overlapping subject matter.  (SAC, ¶29).  Indeed, Allergan concedes

7  this fact through its assertion that the compound in Athena's products infringes *both*

8  patents.  (*Allergan I* Fourth Amended Complaint ¶¶38-42; *Allergan, Inc. v. Athena*

9  *Cosmetics, Inc.*, Case No. CV09-0328, Complaint ¶¶54-58).  Thus, under 35 U.S.C. §

10  102(g), either the '404 Patent or the '029 Patent must be invalid as a matter of law.  As

11  explained by the Federal Circuit, "[35 U.S.C. § 102(g)] operates to ensure that a patent is

12  awarded only to the 'first' inventor in law."  *Apotex USA, Inc. v. Merck & Co., Inc.*, 254

13  F.3d 1031, 1035 (Fed. Cir. 2001).  "[I]f a patentee's invention has been made by another,

14  prior inventor who has not abandoned, suppressed, or concealed the invention, § 102(g)

15  will invalidate that patent."  *Id.* (citing *New Idea Farm Equip. Corp. v. Sperry Corp.*, 916

16  F.2d 1561, 1566 (Fed. Cir. 1990)).  Therefore, no reasonable litigant could realistically

17  expect success on the merits of validity on *both* patents.

18       Allergan's claim that the litigation is not a sham because one of these patents is

19  valid is inapposite.  The allegations in Athena's SAC are sufficient to demonstrate that

20  even if one of these patents is in fact valid, Allergan's assertion of the patent with the later

21  invention date against Athena renders the litigation a sham.  When Allergan entered into

22  the license agreement with Duke University regarding the '029 Patent on December 17,

23  2007, Allergan *knew* whether the '404 Patent or the '029 Patent has priority over the other

24  based on an earlier invention date.  Therefore, Allergan filed a bad faith claim of

25  infringement against Athena as to either the '404 Patent or the '029 Patent.  Athena

26  cannot allege at this early stage of the litigation which of the two patents is asserted in bad

27  faith because the evidence relating to the patents' invention dates lies with Allergan until

28  Athena can take discovery.  *See Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028,

1037 (C.D. Cal. 2007) (explaining the Ninth Circuit's "'policy disfavoring the pre-trial

dismissal of antitrust actions because the proof lies largely in the hands of the defendants.'") (citing *Earnest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 835 (9th Cir. 1995)). Thus, Athena has adequately alleged that Allergan's patent litigation is a sham.[2]

**b. Allergan's False and Disparaging Statements Are Anticompetitive Conduct**

Allergan's false and disparaging statements constitute anticompetitive conduct in violation of the Sherman Act. The Ninth Circuit has stated that to demonstrate exclusionary conduct via disparagement, a party must make a "preliminary showing of significant and more-than-temporary harmful effects on competition." *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns., Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997) (emphasis omitted). Athena has adequately alleged all six elements required to show that Allergan's false and disparaging statements have had more than a *de minimis* effect on competition, by pleading that the representations were "[1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals." *Am. Prof'l Testing Serv.*, 108 F.3d at 1152 (citation omitted).

Athena has adequately alleged that the disparaging statements made by Allergan's representatives were clearly false. For example, Athena alleged that Allergan's representatives made statements that RevitaLash "would imminently be seized by the FDA." (SAC, ¶31). Allergan has no evidence that RevitaLash is in danger of being seized by the FDA, let alone imminently. Allergan's argument in defense of its disparaging statements is that it is "entirely possible" that the events described in the statements could occur in the future. (Pl. Br. at 13). Regardless of this possibility, as Athena alleged in SAC, ¶31, the disparaging statements were false *when they were made*. *See Alternative Electrodes, LLC v. Empi, Inc.*, 597 F.Supp.2d 322, 332 (E.D.N.Y. 2009)

---

[2] The foregoing argument responds only to Allergan's litigation-related anticompetitive conduct. However, Athena has also alleged non-litigation related anticompetitive conduct. (SAC, ¶¶31, 34-35). The presumption of *Noerr-Pennington* immunity does not even attach to this conduct in the first instance. *See, e.g., Coalition for ICAAN Transparency, Inc. v. Verisign, Inc.*, 567 F.3d 1084, 1093 (9th Cir. 2009).

1  (citing *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs. Div. of/and Am. Home Prods.*

2  *Corp.,* 850 F.2d 904, 916 (2d Cir. 1988)) (allegation that representation was "false and

3  misleading in certain respects" was sufficient at motion to dismiss stage).  Allergan also

4  defends another of its false statements by alleging that Athena itself has stated that it is

5  being "put out of business by Allergan and Latisse," citing Athena's SAC, ¶59.  This is a

6  clear mischaracterization of SAC, ¶59, which in fact asserts only that if Allergan's *illegal*

7  *conduct* is not enjoined, Athena and every other participant will be excluded from the

8  PGEEP Market.  (SAC, ¶59) (emphasis added).

9       Athena has adequately alleged that Allergan's false and disparaging statements

10  were material and likely to induce reasonable reliance.  Without specifically addressing

11  any of the false and disparaging statements it made, Allergan's only argument on this

12  point is that in general, consumers are by definition skeptical of claims made by one

13  competitor about another.  (Pl. Br. at 13).  In support of this argument, Allergan cites to

14  *Am. Prof'l Testing Serv.*  However, in *Am. Prof'l Testing Serv.* the customers were

15  students signing up for a one-time bar review course.  The present situation is readily

16  distinguishable from *Am. Prof'l Testing Serv.*, in that many of Athena's customers are

17  medi-spas that purchase RevitaLash in large quantities for ongoing resale to individual

18  customers.  Allergan's false and disparaging statements such as that Athena will have to

19  "pay royalties to Allergan to use their ingredient," that Athena is being put out of business

20  by Allergan, and that Athena's products would be imminently seized by the FDA, are

21  especially likely to be relied upon by medi-spas due to their concern that they will be

22  unable to resell their inventory of RevitaLash if the events alleged in Allergan's

23  statements were true. *See e.g.*, *MGA Entertainment, Inc.,* 2005 WL 5894689, at *2, 8

24  (Defendant's motion to strike denied where Plaintiff alleged Defendant "falsely told a

25  United Kingdom retailer that [Plaintiff] was discontinuing one of its lines, in order to

26  make such line less attractive to buyers and thereby attempt to increase sales of the

27  competitive [Defendant] product and improve its own sales, at [Plaintiff's] expense."); *see*

28  *also Ultronics, Inc. v. Cox Cable of San Diego, Inc.*, 1991 WL 1302931, at *5-6 (S.D.

1  Cal. 1991) (Defendant's comment that Plaintiff is a "fly by night and they won't be here

2  tomorrow" supported showing of anticompetitive conduct in violation of Sherman Act);

3  *see also Conceptual Eng'g Assocs., Inc. v. Aelectronic Bonding, Inc.*, 714 F. Supp. 1262,

4  1269 (D. RI. 1989).

5  In addition, Athena has adequately alleged that Allergan's false and disparaging

6  statements were made to buyers without knowledge of the subject matter.  Whether a

7  buyer has "knowledge of the subject matter" involves an analysis of whether the buyer

8  would have any way of knowing that the claims made in the statements were false.  *See*

9  *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 2009 WL 1769444, at *7 (C.D. Cal. 2009)

10  (athletes to whom the disparaging statements were made constituted buyers "without

11  knowledge of the subject matter" because they "had no way of knowing that

12  [spokesperson for competitor's products] claims of a '2% advantage' were false").

13  Allergan's argument that Latisse is only available by prescription from physicians who

14  "by definition have 'knowledge of the subject matter,'" (Pl. Br. at 13), is incorrect

15  because Allergan's false and disparaging statements concern issues such as patent

16  infringement, regulatory enforcement and Athena's market longevity, (SAC, ¶51)—

17  subject matter of which physicians would have no knowledge.

18  *Walgreen Co. v. AstraZeneca Pharm. L.P.*, 534 F. Supp. 2d 146 (D.D.C. 2008),

19  cited by Allergan in support of its proposition that medical professionals are persons

20  "knowledgeable of the subject matter," is inapposite.  Unlike the instant case, *Walgreen*

21  involved disparaging comments regarding the effectiveness and advantages of similar

22  drugs—a subject matter of which medical professionals would naturally be

23  knowledgeable.  534 F. Supp. 2d 146 at 152.  Moreover, Allergan's false and disparaging

24  statements were made not only to Latisse buyers but also to RevitaLash buyers, (SAC, ¶

25  31), including medi-spas and the general public, who would have just as little knowledge

26  as physicians of the subject matter of Allergan's disparaging statements.

27  Athena also adequately alleged that Allergan's false and disparaging statements

28  have continued for prolonged periods of time.  *Am. Prof'l Testing Serv.*, the primary case

cited by Allergan in defense of its conduct, "caution[s] . . . against attaching much weight to *isolated* examples of disparagement." 108 F.3d at 1152 (emphasis added). Unlike *Am. Prof'l Testing Serv.*, where the disparaging statements were made on a small number of fliers during a two-month period, Athena alleged that Allergan's representatives began making such disparaging statements at least from the time of the instigation of the first lawsuit against Athena in 2007, and the frequency of these statements has only increased since. (SAC, ¶31). This clearly satisfies the "prolonged period of time" element. *See, e.g., TYR Sport Inc.* at *7 ("prolonged period of time" element satisfied when disparaging statements had continued for seven months or more).

Finally, Athena has adequately alleged that Allergan's false and disparaging statements are not readily susceptible of neutralization or other offset by Athena. Athena has alleged that Allergan's disparagement has reached geographically disparate locations in multiple states through its use of a sales representative force many times larger than Athena's. (SAC, ¶32). It is therefore not possible for Athena to keep abreast of and neutralize this pervasive an attack on Athena and its products. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 1998 WL 883469 at *11 (D.Del. 1998), *rev'd in part*, 214 F.3d 395 (3d Cir. 2000) (Plaintiff's allegations that defendant made false representations in an "extensive publicity campaign" meant that defendant was not entitled, in a motion to dismiss, to an inference that defendant's statements were readily susceptible to neutralization). Allergan's conclusory statement that its false and disparaging statements are readily susceptible of neutralization is unsupported and makes no attempt to address or rebut the points raised by Athena in Athena's SAC, ¶32.

### 2. Athena Alleged "Monopoly Power" and "Dangerous Probability of Success"

The offense of monopolization under §2 of the Sherman Act consists of two elements: "(1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 284 U.S. 563, 570-71 (1966). When

considering the sufficiency of allegations related to the relevant market and power in the market, "[t]here is no requirement that these elements of the antitrust claim be plead with specificity." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008). Monopoly power can be shown either by direct or circumstantial evidence. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). Proof of "restricted output and supracompetitive prices" is direct evidence of the injurious exercise of monopoly power. *Image Technical Servs., Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1202 (9th Cir.1997) (citation omitted); *Rebel Oil Co.*, 51 F.3d at 1434. Monopoly power can also be proven with circumstantial evidence. To prove monopoly power with circumstantial evidence, a plaintiff must**:** (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and that existing competitors lack the capacity to increase their output in the short run. *Rebel Oil Co.*, 51 F.3d at 1434.

In this case, Allergan does not dispute that Athena has adequately alleged the relevant market or the existence of barriers to entry for each of its antitrust counterclaims. Indeed, Allergan's arguments on monopoly power allegations can be distilled to just three points: (1) that with respect to Athena's single-market allegations, Athena has not adequately alleged "supracompetitive prices" because Athena has not alleged that Allergan has affected the prices of *other* firms operating within the PGEEP Market; (2) that with respect to Athena's dual-market allegations, Athena has not alleged that Allergan possesses market share within the target market, the Retail Eyelash Enhancement Product Market ("REEPM"); and (3) that because Allergan is "prohibited" by regulation from operating in the REEPM, it cannot be liable for monopolizing it. Each of Allergan's arguments is incorrect and inadequate to support a determination that Athena's monopoly power allegations are inadequate for purposes of Allergan's motion.[3]

---

[3]  Many of Allergan's arguments on this point are factual in nature. (Pl. Br. at 15) (arguing that Athena "admits" that it does not know Allergan's precise market share, and discussing the relative life spans of Latisse and RevitaLash). Though Athena has alleged more than adequate facts on this point, it was not required to do so to defeat Allergan's instant motion. *See* Areeda & Hovenkamp, ANTITRUST LAW, ¶307 at 122 (3d ed. 2007) ("[A] plaintiff need not plead all of its evidence on the market power question. Indeed, the question of . . . market power is typically left to economic experts, and their reports are rarely made until after a complaint has been filed.") (citation omitted).

### a. Athena's Single-Market Allegations

In its SAC, Athena properly alleges Allergan's market power *both* through circumstantial and direct means.  Nonetheless, in its moving brief, Allergan entirely ignores this fact, instead focusing the whole of its argument on purported deficiencies in Athena's allegations of direct proof of market power—specifically the "supracompetitive prices" element.  (Pl. Br. at 15-18).  As such, even if Allergan were correct—which it is not—that Athena had not adequately alleged market power using *direct evidence*, there is no dispute Athena has nonetheless adequately alleged market power based on Allergan's dominant market share and the presence of significant entry barriers that allow Allergan to exercise its power without fear of competitive discipline.

### i. Athena Has Adequately Alleged Via Circumstantial Evidence That Allergan Has Monopoly Power in the PGEEP market

First, Athena has adequately alleged the relevant market, which Allergan concedes.  The single market defined in Athena's allegations—the PGEEP—consists of all eyelash enhancement products containing prostaglandins or prostaglandin analogs.  (SAC, ¶10).  This market captures Allergan's Latisse product as well as all economic substitutes, as defined by reasonable interchangeability of use for the purpose of enhancing the appearance of eyelashes.  (SAC, ¶¶11-13); *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

Second, Athena has adequately pleaded Allergan's dominant share of the PGEEP Market.  Indeed, Athena alleged that, at the close of the first financial quarter of 2009, Allergan's sales of Latisse in the United States totaled $8.24 million.  (SAC, ¶15).  Taken together with Athena's market share allegations as to the other firms participating in the PGEEP Market, Allergan's alleged share during the first quarter of 2009 is between 65% and 66%.  (*Id.*).  This is an adequate allegation of dominance under Section 2 for either monopoly maintenance or attempted monopolization.  *See, e.g.*, *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924-25 (9th Cir. 1980*), cert. denied*, 450 U.S. 921 (1981) (65% market share may adequately plead monopoly power for monopoly maintenance claim); *Netflix, Inc. v. Blockbuster, Inc.*, 2006 WL 2458717, at *6 (N.D. Cal. Aug. 22, 2006) (antitrust claimant sufficiently alleged power for monopoly maintenance

purposes with allegation that patent infringement plaintiff possessed 65% of market for Internet DVD rentals); *Rebel Oil*, 51 F.3d at 1438 (44% market share sufficient as a matter of law). It is also clear that Allergan's share of the PGEEP Market is still growing. (Ex. D, attached 10-Q). And, as with Athena's relevant market allegations, Allergan does not dispute the adequacy of Athena's allegations as to Allergan's dominant market share.

Third, Athena has adequately alleged both significant barriers to entry and existing competitors' inability to increase production in the short run. Athena alleged that a firm contemplating entry into the PGEEP Market would encounter "large sunk costs, the 'lock in' effect, high set-up and switching costs, the difficulties and high costs associated with procuring the constituent chemical compounds, and the promise of incurring the high litigation costs necessary to defend against sham patent infringement litigation filed by Allergan." (SAC, ¶26). Athena also specifically alleged that commercially-available prostaglandin analog in the United States has become increasingly scarce as the result of Allergan's sham patent infringement suits. (*Id.*). Thus, Athena alleged that existing competitors cannot easily obtain the only essential input to production of prostaglandin or prostaglandin analog eyelash products—prostaglandin molecules—and potential entrants are dissuaded by the promise of exorbitant legal fees from sham litigation. (*Id.*). Athena also alleged that Allergan has forced competitors within the PGEEP Market to agree to leave the market as a condition to settling Allergan's patent infringement claims. (SAC, ¶27). These allegations are more than adequate to state plausibly the existence of barriers to market entry. *See, e.g.*, *Image Technical Services, Inc.*, 125 F.3d at 1207-08 (listing common entry barriers as including patents or other legal licenses, control of essential or superior resources, entrenched buyer preferences, high entry costs and economies of scale) (citation omitted); *see also*, *IGT v. Alliance Gaming Corp.*, 2007 WL911773 at *9 (D. Nev. 2007) (antitrust defendant's sham patent infringement suits excluded existing market competitors and stalled entry of new ones). Thus, because Athena has alleged that Allergan "possess[es] [ ] a dominant share of the relevant market that is protected by entry barriers," *United States v. Microsoft,* 253 F.3d 34, 51 (D.C. Cir. 2001) (en banc), Athena has adequately pleaded the monopoly power element of its §2 monopolization counterclaims, and Allergan's argument regarding the monopoly power element fails.

14

1  Allergan does not (and cannot) dispute that Athena's allegations regarding

2  dangerous probability of success or monopoly power through circumstantial evidence are

3  in the single market are adequate.

4  **ii.   Athena Has Adequately Alleged Via Direct Evidence of
        Supracompetitive Pricing That Allergan Has Monopoly Power in
5       the PGEEP Market**

6  In addition to ignoring Athena's allegations of market power describing Allergan's

7  dominant share backed with substantial entry barriers, Allergan distorts the law in a bid to

8  avoid adjudication based upon evidence.  By alleging that Allergan continues to charge

9  roughly five times as much for its Latisse product as Athena and other firms do for

10  reasonably interchangeable products, Athena has identified precisely the sort of conduct

11  that is the hallmark of the monopolist—the ability to charge supracompetitive prices for a

12  sustained period of time without regard for competitive pressure.  (SAC, ¶16).  *See, e.g.*,

13  *Am. Academic Suppliers, Inc. v. Beckley-Cardy, Inc.*, 922 F.2d 1317, 1319 (7th Cir.1991)

14  (monopoly power is "the power to charge a price higher than the competitive price

15  without inducing so rapid and great an expansion of output from competing firms as to

16  make the supracompetitive price untenable[ ]"); *see also*, *In re Warfarin Sodium Antitrust*

17  *Litig.*, 391 F.3d 516, 528 (3d Cir.2004) (monopoly would permit Dupont to "charge

18  supracompetitive prices for Coumadin"); Areeda & Hovenkamp, ANTITRUST LAW, ¶501

19  at 111 (3d ed. 2007) ("For antitrust purposes, [ ] market power is the ability (1) to price

20  substantially above the competitive level *and* (2) to persist in doing so a significant period

21  without erosion by new entry or expansion.") (emphasis in original).

22  Not one of Allergan's cited cases concerns proof of market power through direct

23  evidence of the power to control prices.  Rather, all involve proof of market power

24  through circumstantial evidence – i.e., via dominant share and substantial barriers to

25  entry.  *See United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966) (inferring monopoly

26  power from 87% market share); *Rebel Oil*, 51 F.3d at 1434 (noting that Rebel submitted

27  circumstantial evidence of market power, and analyzing the sufficiency of that

28  circumstantial evidence).  While Allergan cites a correct definition of monopoly power—

ATHENA COSMETICS, INC.'S OPPOSITION TO ALLERGAN INC.'S MOTION TO DISMISS
ATHENA'S THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH COUNTERCLAIMS

"the power to control prices or exclude competition"—its application of it includes a fundamental error. (Pl. Br. at 16-17). Allergan implies that Athena must show that Allergan's conduct has raised the prices of the products of *other firms* in the PGEEP Market for Athena to properly allege the monopoly power element of its §2 claims. (*Id.* at 17). This is false. To the contrary, the essence of monopoly power is a firm's ability to set a price for its *own* goods substantially above the competitive level *regardless of competitive pressure*. *See, e.g., Am. Academic Suppliers, Inc.,* 922 F.2d at 1319.

Allergan's reliance on *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377 (1956), is misplaced. The issue in *du Pont* was market definition. Specifically, du Pont had argued and the district court had determined that the "'relevant market for determining the extent of du Pont's market control is the market for flexible packing materials.'" *Id.* at 380. Nowhere in *du Pont* did the Court pass on or did either party even argue direct evidence of other firms' supracompetitive pricing. Moreover, *du Pont* is simply inapposite because the key findings in that case—low market share and the absence of any proof of du Pont's ability to exclude competitors—clearly distinguish it from the allegations made by Athena in its SAC.

### b. Athena's Dual-Market Allegations

If consumers have sufficient information regarding the equivalent utility of Latisse and the non-drug prostaglandin analog eyelash products for purposes of enhancing the appearance of eyelashes, then the products are in the same market for antitrust purposes. This is the essence of Athena's single-market allegations. (SAC, ¶¶10-17). If, however, consumers do not yet understand the functional interchangeability of the products for cosmetic purposes, then Latisse and the non-drug prostaglandin or prostaglandin analog eyelash products exist in separate, though adjacent, markets. This is the essence of Athena's dual-market allegations. (SAC, ¶¶18-24).

Athena alleged that Allergan launched sham patent litigation against firms competing in the adjacent REEPM for the purpose of destroying competition there as a strategy for maintaining its monopoly position with Latisse. (SAC, ¶¶21-23). It argues

1   that because Athena has not alleged that Allergan has a specific share of the REEPM, the

2   dual-market allegations are inadequate.  (Pl. Br. at 18-19).  Not so.  The theory behind

3   Athena's dual-market allegations is not that Allergan is expanding the scope of its

4   monopoly, but that Allergan is destroying the adjacent market to maintain its dominance –

5   i.e., that it is engaging in anticompetitive conduct designed to maintain its monopoly.

6   *Broadcom Corp. v. Qualcomm, Inc.,* 501 F.3d 297 (3d Cir. 2007) is instructive.

7       At issue in *Broadcom* were the two primary technology paths for mobile

8   telephones, CDMA and UMTS.  *Id.* at 303.  Broadcom alleged that Qualcomm viewed

9   competition from the UMTS market as a "long-term threat to its existing monopolies in

10  CDMA technology" and had sought to monopolize the UMTS chipset market through

11  conduct including discriminatory licensing and demanding royalties on parts of UMTS

12  chipsets for which it did not own patents.  *Id.*  Although Broadcom alleged that

13  Qualcomm possessed a 90% share of the market for CDMA-path chipsets, *id.* at 304,

14  Broadcom did not allege Qualcomm's share of the UMTS market.  *Id.* at 319. The

15  relevant market in the suit, however, was the worldwide market for UMTS chipsets.  *Id.* at

16  318.  The UMTS chipset market was "in its infancy," and was experiencing "rapid

17  growth."  *Id.* at 318-19. The Third Circuit held that determining whether a defendant has a

18  "dangerous probability" of successful monopolization is a "fact-sensitive inquiry, in

19  which market share is simply one factor."  *Id.* (citation omitted).  The *Broadcom* Court

20  found several factors persuasive in concluding that Broadcom had adequately alleged the

21  "dangerous probability" element despite its having omitted any market share allegation.

22  First, the complaint alleged the anticompetitive conduct in considerable detail, and

23  described their anticompetitive effects.  *Id.* Also, Broadcom alleged  that Qualcomm's

24  actions had foreclosed its entry into the UMTS chipset market  *Id.*  Finally the *Broadcom*

25  Court noted that the target market was experiencing "rapid growth," and that Qualcomm

26  was extending its anticompetitive practices into that emerging market.  *Id.*

27      *Broadcom* thus speaks to the specific scenario presented by Athena's dual-market

28  allegations: the existence of two adjacent markets, one over which the monopolist already

17

1  possesses dominance, and a second target market that the monopolist views as a threat to
2  its position and therefore seeks to destroy.  In *Broadcom* Qualcomm already possessed a
3  90% share of the CDMA chipset market and sought to preempt a threat to its CDMA
4  monopoly from the burgeoning UMTS market.  In the instant case, Athena has alleged
5  that Allergan possesses 100% of the EPDM, and is launching sham patent litigation
6  against firms in the adjacent REEPM in order to eliminate the threat from their products in
7  that market.  (SAC, ¶¶21-24).  Moreover, just as in *Broadcom*, Athena alleged how
8  Allergan has used sham patent litigation and its threat to prevent new firms from entering
9  as well as to force participants in the REEPM to exit permanently . (SAC, ¶¶26-27).  Like
10 the UMTS market at issue in *Broadcom*, the REEPM is a relatively new market.  Finally,
11 *Broadcom* concerned a monopolist whose power to control prices and exclude
12 competitors derived at least in part from patents, and circumstances where it wielded
13 those patents as a club, just as Athena has alleged Allergan has done.  (SAC, ¶¶22, 26-30).

14      In support of its assertion that it cannot be held liable unless it has some share of
15 the REEPM, Allergan cites several cases.  Upon reading, however, it is clear that each
16 case is inapposite.  Indeed, not a single one of the cases cited by Allergan deals with a
17 monopoly maintenance claim involving products in two markets.

18      Allergan cites *E. Portland Imaging Ctr., P.C. v. Providence Health Sys.-Or.*, 2008
19 U.S. App. LEXIS 10984 (9th Cir. May 20, 2008), for the proposition that Athena must
20 allege Allergan's market share in the target market to withstand a motion to dismiss.  (Pl.
21 Br. at 19).  However, *E. Portland Imaging* does not stand for this proposition, and is itself
22 inapposite.  *E. Portland Imaging* is an unpublished case in which the issue on appeal was
23 a grant of summary judgment, not a motion to dismiss.  *E. Portland Imaging Ctr., P.C.*,
24 2008 U.S. App. LEXIS 10984, at *1.  Moreover, the only substantive issue was whether
25 the plaintiff had adequately pleaded entry barriers—not market share.  The issue of
26 defendants' participation within the relevant market was not discussed at all.  *Id.*

27      Allergan also cites *Mercy-Peninsula Ambulance, Inc. v. County of San Mateo*, 791
28 F.2d 755 (9th Cir. 1986), but that case principally dealt with whether the defendant—a

ATHENA COSMETICS, INC.'S OPPOSITION TO ALLERGAN INC.'S MOTION TO DISMISS
ATHENA'S THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH COUNTERCLAIMS

1  municipality—enjoyed immunity from federal antitrust laws under a state statute.  *Id.* at
2  757-58.  In the final two paragraphs, the *Mercy-Peninsula* Court addressed the plaintiff's
3  Sherman Act §2 claim that the defendant should be held liable for conduct occurring prior
4  to the passage of the state statute.  *Id.* at 759.  The court held that, because the defendant
5  municipality "performs ***no*** health care services," it was not a competitor in ***any*** market,
6  and could not be charged with using its position to exclude competitors.  *Id.* (emphasis
7  added).  Also cited by Allergan, *Portney v. CIBA Vision Corp.*, 593 F. Supp. 2d 1120
8  (C.D. Cal. 2008), is inapposite for similar reasons.  In *Portney*, the relevant market was
9  for "multifocal contact lenses" in the United States.  *Id.* at 1126-27.  The *Portney* Court
10  held that, because the antitrust defendant "did not himself produce or sell contact lenses or
11  otherwise compete in the contact lens market," and was "an individual without ***any***
12  manufacturing or sales capacity, and ***no market share whatsoever***," the antitrust
13  defendant was not a "competitor."  *Id.* at 1128 (emphasis added).  Both *Mercy-Peninsula*
14  and *Portney* dealt with a single relevant market, and a defendant who did not compete *at
15  all*.  In our case, Allergan is unlike the county defendant in *Mercy-Peninsula* or the
16  individual patentee/licensor in *Portney*, in that Allergan competes in the Eyelash
17  Prescription Drug Market ("EPDM")—a market closely adjacent to the REEPM target
18  market – and is using the baseless patent claims that contribute, in part, to its monopoly
19  power in the EPDM to eliminate a threat to its monopoly emanating from eyelash
20  enhancement products currently competing in the REEPM.  As such, neither *Mercy-
21  Peninsula* nor *Portney* controls the instant case.

22     In fact, none of the cases cited by Allergan deals with the issue presented here.  In
23  each of those cases, the focus was on whether *monopoly power* can be inferred from
24  market participation, such that the monopolist can exclude competition and charge
25  supracompetitive prices.  However, a patent holder that is illegally wielding its patents for
26  anticompetitive purposes *can* exercise market power in a target market just as surely as a
27  market participant.  *Cf.*, *Illinois Tool Works v. Independent Ink, Inc.*, 547 U.S. 28, 42-43
28  (2006); United States Department of Justice and Federal Trade Commission, Antitrust

Guidelines for the Licensing of Intellectual Property, § 4.1.1 (1995) (when a licensor and licensee are in a vertical relationship, the agencies will look to see whether the particular licensing arrangement "may harm competition among entities in a horizontal relationship at either the level of the licensor or the licensees, or possibly in another relevant market"; no requirement that the licensor compete in an affected market).

Also, Allergan *does* actually compete. As Athena's allegations state, Allergan has, in less than a year, managed to realize revenues from its Latisse product that dwarf those of other prostaglandin or prostaglandin analog eyelash product sellers. (SAC, ¶16). By dint of its sham patent litigation, Allergan asserts the power to clear out the target market of purported infringers. That is essentially Athena's claim—that it can and will shut the REEPM down entirely.

Finally, Allergan argues that Athena's dual-market allegations are inadequate because Allergan is prohibited by law from selling Latisse in the REEPM. (Pl. Br. at 18-19). In support of this argument, Allergan cites *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405 (3d Cir. 1997). The issue in *Schuylkill* was whether the plaintiff had suffered antitrust injury and thus had standing under Section 4 of the Clayton Act to maintain a private cause of action for damages arising under Section 2. *Id.* at 413-15. The *Schuylkill* Court answered that question in the negative, holding that a plaintiff who does not herself participate in the relevant market does not have standing under Section 4 of the Clayton Act. *Id.* at 415. *Schuylkill* is therefore a case that stands for the proposition that an antitrust *plaintiff* must participate in the relevant market in order to have suffered antitrust injury and have standing under Clayton Act Section 4. It is a case about failure to plead antitrust injury, not about monopoly power. Because Allergan's standing under Clayton Act Section 4 is plainly irrelevant, and because Athena has properly alleged that it does participate in the target REEPM, *Schuylkill* is inapposite.

### 3. Athena Adequately Alleged Antitrust Injury

An antitrust plaintiff must prove its injury flowed from the anticompetitive acts:

Plaintiffs must prove *antitrust* injury, which is to say injury of

> the type the antitrust laws were intended to prevent and that
> flows from that which makes defendants' acts unlawful. The
> injury should reflect the anti-competitive effect of the violation
> or of anticompetitive acts made possible by the violation. It
> should, in short, be "the type of loss that the claimed violations
> . . . would be likely to cause."

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (emphasis in original). "If the plaintiff's injury is directly related to the competitive evil that makes a practice unlawful, then that harm is antitrust injury." Areeda & Hovenkamp, ANTITRUST LAW, ¶391a at 320 (3d ed. 2007). In the SAC, Allergan's anticompetitive conduct "harm[ed] the competitive process and thereby consumers in the relevant markets . . . if Allergan's anticompetitive behavior is not enjoined, competition from retail prostaglandin eyelash products will be eliminated, and consumers will be forced to pay higher prices than they would in a competitive market []." (SAC, ¶36). Moreover, Athena and other competitors offering prostaglandin or prostaglandin analog eyelash products in the PGEEP Market or the REEPM "have lost substantial sales and revenues as a result of Allergan's monopolizing conduct." *Id.*

Thus, Athena has lost "sales and revenues" as a result of Allergan's conduct. (SAC, ¶36). The conduct that harmed Athena and the other remaining prostaglandin or prostaglandin analog eyelash product manufacturers is *the very same conduct* that has also harmed consumers with reduced output. For instance, Allergan's sham litigation tactics have already reduced product output by forcing some competitors to leave the market as a condition of settlement. (SAC, ¶27). In addition, Allergan's bad-faith lawsuits forced prostaglandin or prostaglandin analog molecule manufacturing firms to leave the market. (SAC, ¶26). Because these injuries stem directly from competition-reducing aspects of Allergan's conduct, Athena has adequately alleged antitrust injury. *See Atl. Ritchfield Co. v. USA Petroleum, Co.*, 495 U.S. 328, 344 (1990).

In addition, Athena alleged injury in the form of the costs it has incurred in order to defend against Allergan's sham litigation—more than $1.2 million over the past two-plus years. (SAC, ¶37). Allergan's sham lawsuits are a barrier to entry, and excluded

1   competitors means reduced output, as well as injuries to consumers in the forms of fewer

2   choices, reduced quality and higher prices.  *See Amgen, Inc. v. F. Hoffman-La Roche,*

3   *Ltd.*, 480 F. Supp. 2d 462, 468-69 (D. Mass. 2007).   An antitrust counterclaimant's

4   litigation costs qualify as valid antitrust injury where the antitrust plaintiff also has other

5   damages that that are related to the decrease in competition.  *See Ostrofe v. H.S. Crocker*

6   *Co., Inc.*, 740 F.2d 739, 751 (9th Cir. 1984) (Kennedy, J. dissenting) (citing *Handgards,*

7   *Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1296-97 (9th Cir. 1984) (awarding cost of defending

8   sham patent infringement suit in addition to lost profits)); *see also Rickards v. Canine Eye*

9   *Registration Foundation*, 783, F.2d 1329, 1335 (9th Cir. 1986); *CVD, Inc. v. Raytheon*

10  *Co.*, 769 F.2d 842, 858 (1st Cir. 1985); *Amgen*, 480 F. Supp. 2d at 468-69 (denying

11  motion to dismiss and holding litigation expenses incurred by *Walker Process*

12  counterclaim are antitrust injury).  Athena clearly has alleged other damages related to the

13  decrease in competition, such as lost sales and revenues.   (SAC, ¶36).  Thus, Athena has

14  properly alleged antitrust injury.

15  **B.    Athena Has Stated a Claim for Unfair Competition Under the Lanham Act**

16          Federal Rule of Civil Procedure 9(b) does not apply to Athena's counterclaim.

17  Thus, Athena's counterclaim should be judged by the ordinary notice-pleading standard.

18  Even if Rule 9(b) did apply, however, Athena's pleading would still pass muster.

19  Accordingly, the Court should deny Allergan's Motion to Dismiss the Unfair Competition

20  Claim.

21          **1.    Rule 9(b) Does Not Apply to Athena's Unfair Competition Claim**

22          Although Allergan contends that Rule 9(b) governs the pleading of Athena's unfair

23  competition claim, the Ninth Circuit has never held that the rule applies to claims under

24  the Lanham Act.  *See Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 2009 U.S.

25  Dist. LEXIS 64108, at *23 (C.D. Cal. July 16, 2009) ("The Ninth Circuit has not

26  determined that Rule 9(b) applies to Lanham Act claims, although some district courts

27  have applied this standard.").[4]  At most, Athena must meet an intermediate pleading

28  _____

[4] A Lanham Act claim is not categorically held to the stringent Rule 9(b) standard.  *See, e.g., In re Century 21-RE/MAX Real Estate Adver. Claims Litig.*, 882 F. Supp. 915, 927 (C.D. Cal. 1994) (Lanham Act claim is *not* subject to the strict pleading

1  standard that is weaker than the Rule 9(b) requirement because Athena alleges that the

2  false statements were made to third parties, and therefore Athena lacks knowledge of

3  more granular details at this early stage. *See* 5A Charles Alan Wright & Arthur R. Miller,

4  *Federal Practice and Procedure* § 1298 (3d ed. 2004) ("When the pleader is asserting that

5  third persons have been defrauded, the pleader may lack sufficient information to be able

6  to detail the claim at the outset of the action and less particularity should be required.");

7  *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998) ("[The]

8  particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to

9  all facts necessary to detail his claim, and that is most likely to be the case where [he]

10 alleges a fraud against one or more third parties."). Also, less particularity is required

11 since Allergan representatives made the false statements to a number of third-party

12 Athena customers, and thus the statements are well within Allergan's knowledge. *See*

13 *Transcription Communs. Corp. v. John Muir Health*, 2009 U.S. Dist. LEXIS 25151, at

14 *38-39 (N.D. Cal. Mar. 13, 2009) (finding adequate pleading, although the plaintiff did

15 not specify "time and person details," because defendants had knowledge of the

16 communications).

17 **2.    The Unfair Competition Claim Meets Rule 9's Pleading Standard**

18 Even under Rule 9(b), however, Athena's pleading meets that heightened standard

19 by providing the "who, what, when, where and how" of the alleged misconduct. *See*

20 *Brosnan v. Tradeline Solutions, Inc.*, 2009 U.S. Dist. LEXIS 48262, at *13 (N.D. Cal.

21 June 5, 2009) ("Courts have explained [Rule 9(b)] as requiring that claims of fraud

22 include the 'who, what, when, where and how' of the alleged misconduct.") (citations

23 omitted). Instead of generally naming the entire Allergan corporation, the SAC identifies

24

25 requirements of Rule 9 fraud claims-- claim need only be sufficiently detailed to give party charged notice of the nature of the
   alleged wrongful act) (citation omitted); *Wellnx Life Sciences, Inc. v. Iovate Health Sciences Research, Inc.*, 516 F. Supp. 2d
26 270, 283 n.2 (S.D.N.Y. 2007) ("Rule 8(a) . . . and not Rule 9(b) . . . applies to false advertising claims under the Lanham
   Act."); *Syncor Int'l Corp. v. Newbaker*, 12 F. Supp. 2d 781, 783-84 (W.D. Tenn. 1998) (applying Rule 8(a) to a Lanham Act
27 claim based on false implications); *John P. Villano v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997) ("[A] claim of false
   advertising under § 1125 . . . may not be the subject of any heightened pleading requirement.") (citation omitted); *Summit
28 Tech. v. High-Line Medical Instruments, Co.*, 933 F. Supp. 918, 937 (C.D. Cal. 1996) (applying Rule 8(a) to a trademark
   infringement and false advertising claim under the Lanham Act); *Brandt Consol., Inc. v. Agrimar Corp.*, 801 F. Supp. 164,
   170 (C.D. Ill. 1992) (applying Rule 8(a) to Lanham Act claim based on false representations).

1  Allergan's sales representatives as those *who* have been making the false and disparaging

2  comments to Athena's customers and the general public.  (SAC, ¶¶31-32).  The SAC

3  provides *what* specific false statements the representatives have made, including, for

4  example, the statement that RevitaLash would imminently be "seized by the FDA."  (*Id.*,

5  ¶31).  Athena explains *when* these statements have been made, alleging that they began at

6  the instigation of the first patent lawsuit and are still ongoing.  The SAC states *where* the

7  statements have been made – in "geographically disparate locations including Dallas and

8  Austin, Texas, Arizona, Georgia, and San Francisco, Costa Mesa and Ventura,

9  California."  (*Id.*, ¶32).  Finally, Athena describes *how* representatives have been

10  disseminating the false comments – "in the course of marketing [Allergan's] own

11  products (including Latisse)."  (*Id.*, ¶31).  Athena's allegations are more than sufficient to

12  satisfy Rule 9(b)'s standard.  *See United States v. Chapman Univ.*, 2006 U.S. Dist. LEXIS

13  53686, at *26 (C.D. Cal. May 23, 2006) (finding adequate pleading under Rule 9(b) where

14  plaintiffs alleged "the who, Chapman, the when, the past ten years, and the what,

15  [Institutional Participation Agreements].").   Specifically, the allegations do not fail to

16  "give [Allergan] notice of the particular conduct . . . so that [Allergan] can defend against

17  the charge."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003); *see*

18  *also* Wright & Miller, *supra* ("Perhaps the most basic consideration for a federal court in

19  making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) . . . is the

20  determination of how much detail is necessary to give adequate notice to an adverse party

21  and enable that party to prepare a responsive pleading.").

22        Athena has also articulated "what is false and misleading about [the] statement[s],

23  and why [they are] false."  *Vess*, 317 F.3d at 1106.  Athena specifically alleges that it does

24  not infringe Allergan's patents.  (SAC, ¶6).  Thus, statements by Allergan's

25  representatives that Athena's products infringe Allergan's patents and that Athena has to

26  pay royalties to Allergan are false.  In addition, Athena has not yet been "put out of

27  business"; Athena notes that its revenues have declined, the company made

28  approximately $3 million in the first quarter of 2009.  (SAC, ¶15).  Finally, despite

1  Allergan representatives' comments that RevitaLash will be seized by the FDA, Athena

2  clearly affirms in the SAC that "RevitaLash is a *cosmetic* product," (SAC, ¶8) (emphasis

3  added), not a prescription-only drug like Latisse, and thus it is misleading at best to state

4  the product will be seized.

5          **3.      Alternatively, Athena Should Be Granted Leave to Amend**

6          If Rule 9(b) applies to Athena's counterclaim and the Court determines that even

7  more specificity is yet required, Athena requests that the Court dismiss without prejudice

8  and grant Athena leave to amend. "[D]ismissals for failure to comply with Rule 9(b)

9  should ordinarily be without prejudice." *Vess*, 317 F.3d at 1108. If Athena's Seventh

10  Cause of Action is dismissed, Athena requests leave to amend. Athena can plead the

11  cause of action with even more particularity if the Court so requires. The Ninth Circuit

12  has consistently held that leave to amend should be freely granted "when justice so

13  requires." *Lopez v. Smith*, 203 F.3d 1122, 1128 (9th Cir. 2000); *see also Bly-Magee v.*

14  *California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (when dismissing a claim for failure to

15  meet the Rule 9(b) standard, "leave to amend should be granted unless the district court

16  determines that the pleading could not possibly be cured by the allegation of other facts")

17  (internal quotation marks omitted). Here despite having amended previously, this is

18  Athena's first opportunity to have a ruling from the Court as to what will be required. It

19  must be given at least one opportunity to comply with such a ruling.

                                **IV.    CONCLUSION**

21          For the foregoing reasons, the Court should deny the Motion or, alternatively, grant

22  Athena leave to amend.

23  Dated:  August 31, 2009                    GRAVES LAW OFFICE, P.C.

24                                             /s/Philip J. Graves

25                                             Philip J. Graves
                                               John Walton
26                                             Attorneys for Defendants
                                               ATHENA COSMETICS, INC.,
27                                             PHARMA TECH INTERNATIONAL, INC.
                                               and NORTHWEST COSMETIC
28                                             LABORATORIES, LLC

**ATHENA COSMETICS, INC.'S OPPOSITION TO ALLERGAN INC.'S MOTION TO DISMISS**
**ATHENA'S THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH COUNTERCLAIMS**

**PROOF OF SERVICE**

I am over the age of eighteen years and not a party to this action. My business address is Graves Law Office, P.C., 12121 Wilshire Boulevard, Suite 775, Los Angeles, California 90025.

On August 31, 2009, I served the following document entitled

**ATHENA COSMETICS, INC.'S OPPOSITION TO ALLERGAN INC.'S MOTION TO DISMISS ATHENA'S THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH COUNTERCLAIMS**

on all interested parties to this action in the manner prescribed as follows:

See attached list.

____**CM/ECF**: I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing, which transmits a Notice of Electronic Filing to the CM/ECF registrants listed above.

_____**MAIL:** I placed true and correct copies of the document(s) in sealed envelope(s) addressed to the above addressee(s). I am readily familiar with Graves Law Office, P.C.'s practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

____  **FAX:** I caused the within document to be transmitted via facsimile transmission to the above addressee(s) at the above facsimile numbers before 5:00 p.m. on the above date.

_X_  **EMAIL:** I transmitted true copies of the within document (with exhibits) electronically by means of email to the above addressee(s) at the above email address(es).

____  **HAND:** I caused the within document to be hand-delivered to the above addressee(s) at the above address(es).

____  **FEDEX:** I caused the within document to be delivered by Federal Express addressee(s) at the above address(es).

I declare that I am employed by a member of the bar at whose direction such service was made.

Executed on August 31, 2009, at Los Angeles, California.

/s/ Tiphanie Sparks
Tiphanie Sparks

1

**PROOF OF SERVICE**

*Attorneys for Plaintiffs/Counterclaimants*

**ALLERGAN, INC. and MURRAY A. JOHNSTONE**
Jeffrey T. Thomas
T. Kevin Roosevelt
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412
Facsimile:   (949) 451-4220
kroosevelt@gibsondunn.com
jtthomas@gibsondunn.com

*Attorneys for Defendant*
**LIFETECH RESOURCES LLC**
Karen D. McDaniel
Elizabeth A. Zondes
MERCHANT AND GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
kmcdaniel@merchantgould.com
ezidones@merchantgould.com

*Attorneys for Defendant*
**LIFETECH RESOURCES LLC**
Martin C. Washton
Amanda Rose Washton
TOWLE DENISON SMITH LLP
10866 Wilshire Boulevard, Suite 500
Los Angeles, CA 90024
mwashton@tdstlaw.com
awashton@tdstlaw.com

*Attorneys for Defendants*
**PETER THOMAS ROTH LABS LLC**
**PETER THOMAS ROTH INC.**
Bryan J. Sinclair
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO PC
5 Palo Alto Square – 6th Floor
3000 El Camino Real
Palo Alto, CA 94306
bsinclair@mintz.com

*Attorneys for Defendants*
**METICS LLC**
**PRODUCT INNOVATIONS LLC**
**STELLA INTERNATIONAL LLC**
**COSMETIC ALCHEMY LLC**
Jeffrey L. Weiss
WEISS MOY & HARRIS
4204 N. Brown Ave.
Scottsdale, AZ 85251
jweiss@weissiplaw.com

**PROOF OF SERVICE**