UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|
| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |

| Present: The Honorable | James V. Selna | |
|---|---|---|
| S. Mikhail for Karla J. Tunis | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   (IN CHAMBERS)   Order re Motions to Dismiss and to Strike

Counterdefendant Allergan, Inc. ("Allergan") moves to dismiss with prejudice under Federal Rule of Civil Procedure 12(b)(6) the third through seventh counterclaims in the Second Amended Counterclaims ("SAC") filed by counterclaimants Athena Cosmetics, Inc., et al. (collectively, "Athena"). Allergan further moves to strike the third and fifth counterclaims under Rule 12(f). Athena opposes both motions. The motion to dismiss is GRANTED IN PART AND DENIED IN PART, and the motion to strike is DENIED.

I.    Background

Athena has filed three sets of counterclaims against Allergan alleging, inter alia, antitrust violations under the Sherman Act and unfair competition under the Lanham Act.

In its initial set of counterclaims, Athena alleged two relevant markets for eyelash enhancement products – the "Growth Drug Market" and the "Cosmetic Beautification Market." (Initial Counterclaims, Mot. Br., Ex. A ¶¶ 9-15.) Athena alleged that Allergan had 100% of the first market, but no market share in the second. (Id. ¶¶ 16-17.) Athena relied on these allegations to assert that Allergan had attempted to leverage its power in the first market to gain monopoly power in the second, and, alternatively, that Allergan had attempted to monopolize a single market for eyelash enhancement products. (Id. ¶¶ 107-30.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|
| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |

  In its First Amended Counterclaims ("FAC"), Athena realleged the above two markets, but deleted allegations that products in these markets were "not interchangeable with products outside that market," as well as allegations that "Allergan has no market share at this time in the Cosmetic Beautification Market." (Compare id. ¶¶ 11, 13, 17, with FAC, Mot. Br., Ex. B ¶¶ 10, 11, 13.)  Dropping its "attempted monopoly leveraging" claim, Athena asserted only that Allergan was attempting to extend its existing monopoly in the "Drug Growth Market" into the Cosmetic Beautification Market.  (FAC ¶¶ 126-34.)

  Now, in the SAC, Athena once again alleges alternative markets.  First, Athena asserts a single-market theory by which Allergan's prescription-only eyelash enhancement product, "Latisse," as well as over-the-counter products, including Athena's "RevitaLash," are sold in a single market "for eyelash enhancement products containing prostaglandins or prostaglandin analogs (collectively, 'prostaglandins') (the 'PGEEP Market')."  (SAC, Mot. Br., Ex. C ¶ 10.)  Alternatively, Athena puts forth a dual-market theory by which Allergan's Latisse is sold in a prescription drug market, Athena's RevitaLash in a retail market.  (Id. ¶ 18.)  Based on this alternative pleading, Athena asserts four counterclaims under the Sherman Act.  The third and sixth allege that Allergan has monopolized or attempted to monopolize, respectively, the PGEEP Market.  (Id. ¶¶ 54-63, 83-92.)  The fourth and fifth, by contrast, allege that Allergan has monopolized or attempted to monopolize the retail market, as opposed to the prescription market.  (Id. ¶¶ 64-74, 75-82.)

  Throughout the course of these pleadings, Athena has consistently alleged that Allergan's "false and disparaging comments regarding Athena and its RevitaLash products" constitute unfair competition under the Lanham Act.  (Initial Counterclaims ¶¶ 131-35, FAC ¶¶ 135-40, SAC ¶¶ 93-97.)

  Presently before the Court are Defendants' motions to dismiss and to strike.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx) Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|

| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. |
|---|---|

II.  <u>Motion</u> <u>to</u> <u>Dismiss</u>

The Court takes up the motion to dismiss first.

    A.    <u>Legal</u> <u>Standard</u>

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Where the heightened pleading standard of Rule 9(b) does not apply, the complaint "need only satisfy the Rule 8(a) notice pleading standard . . . to survive a Rule 12(b)(6) dismissal." <u>Edwards</u> <u>v.</u> <u>Marin</u> <u>Park,</u> <u>Inc.</u>, 356 F.3d 1058, 1062 (9th Cir. 2004). A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." <u>Bell</u> <u>Atl.</u> <u>Corp.</u> <u>v.</u> <u>Twombly</u>, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft</u> <u>v.</u> <u>Iqbal</u>, --- U.S. ----, 129 S. Ct. 1937, 1949 (May 18, 2009).

In resolving a 12(b)(6) motion under <u>Twombly</u>, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Nor must the Court "accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> at 1949-50 (quoting <u>Twombly</u>, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 1950. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." <u>Id.</u>

    B.    <u>Discussion</u>

Allergan challenges the third through seventh counterclaims, which comprise four antitrust claims under the Sherman Act and one unfair competition claim under the Lanham Act. The Court considers the antitrust counterclaims before turning to the unfair competition counterclaim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|

| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |
|---|---|---|---|

      1.      <u>Antitrust Counterclaims</u>

      The third through sixth counterclaims allege antitrust violations under Section 2 of the Sherman Act, which provides in pertinent part: "Every person who shall monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . ." 15 U.S.C. § 2. The elements of a monopolization claim are: "(1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury." <u>Cost Mgmt. Servs., Inc. v. Wash. Natural Gas Co.</u>, 99 F.3d 937, 949 (9th Cir. 1996). The elements for attempted monopolization are similar: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." <u>Id.</u> at 949-50.

      Allergan challenges the antitrust counterclaims on the grounds that the SAC does not plausibly allege (1) that Allergan has engaged in "anticompetitive" conduct; (2) that Allergan possesses "monopoly power" in any relevant market; and (3) that Athena has suffered "causal antitrust injury." The Court considers each issue in turn.

      a.      <u>Anticompetitive conduct</u>

      Allergan contends that Athena has failed to plead the required anticompetitive conduct. Allergan's contention is two fold.

      First, Allergan argues that Athena cannot plead that Allergan's patent lawsuits constitute "sham" litigation. The parties agree that this allegation is subject to a two-part criteria: "(1) the lawsuit must be objectively meritless such that no reasonable litigant could expect success on the merits and (2) it must be found that the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor." <u>C.R. Bard, Inc. v. M3 Sys., Inc.</u>, 157 F.3d 1340, 1368 (Fed. Cir. 1998) (internal quotation marks omitted) (citing <u>Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49 (1993)). But the parties dispute whether Athena can satisfy the first criterion. The Court finds that Athena's allegations are sufficient at the pleading stage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|

| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |
|---|---|---|---|

      Athena contends that Allergan's lawsuit is objectively baseless on three grounds. Athena first relies on the allegation that "Allergan initiated and continues to prosecute an infringement suit asserting the '105 Patent against Athena . . . despite its knowledge that the '105 Patent is not and has never been infringed by Athena's RevitaLash . . . products." (SAC ¶ 28.) Athena contends that Allergan's knowledge of non-infringement "is demonstrated by the fact . . . that Allergan's own infringement contentions . . . state that 'the claims in the '105 patent . . . if properly construed, do not cover prostamides.'" (Id.; see Docket No. 363, Brody Decl., Ex. A, at 1.) Allergan counters that this statement was made in the context of alternative pleading, in response to which Athena points out that Allergan's initial complaint asserted only the '105 patent and did not assert the '404 patent until sixth months later. Here, "the analysis should focus on what the litigant knew or reasonably could have known at the time the suits were filed." In re Wellbutrin SR Antitrust Litig., No. Civ. A. 04-5525, Civ. A. 04-5898, Civ. A. 05-396, 2006 WL 616292, at *11 (E.D. Pa. Mar. 9, 2006). To the extent Allergan reasonably could have known, at the time of its initial complaint, that its assertion of the '105 patent alone would likely not prevail based on a proper reading of the patent, the Court finds that Athena's allegation of sham litigation is at least plausible in this respect. Read in context, the allegation appears to be that, at a minimum, the lawsuit was objectively baseless at the outset, and that Allergan initiated this suit to interfere with Athena's RevitaLash sales.

      Athena also relies on the allegation that "Allergan is aware of other prior art that renders the '404 Patent invalid." (SAC ¶ 30.) Athena cites three pieces of prior art in particular. (Id.) Allergan puts forth arguments in its reply brief for why none of the cited prior art invalidates the '404 patent. (Reply Br. 6-7.) But the Court may not resolve the factual issues presented by these arguments on a motion to dismiss. For pleading purposes, it is enough that Athena cites the prior art, the implication of which is that the assertion of the '404 patent is objectively baseless. The Court reads this allegation to suggest that the invalidation of the '404 patent based on this prior art was obvious and, moreover, specifically known by Allergan. Accepting the veracity of this allegation, as the Court must on a motion to dismiss, the Court finds that it plausibly gives rise to a claim for sham litigation. This finding is bolstered by the additional allegation that "during its extensive due diligence performed in advance of its entering

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|
| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |

the December 17, 2007 licensing agreement with Duke University regarding the '029 Patent, Allergan discovered that the disclosure of the '029 Patent teaches the purported invention recited in the claims of the '404 Patent."  (SAC ¶ 29.)

Accordingly, Athena has properly pleaded anticompetitive conduct based on sham litigation.

Second, Allergan argues that Athena's allegations of commercial disparagement do not constitute the required anticompetitive conduct.  Although the "harmful effects [of disparagement of a rival] on competitors are ordinarily not significant enough to warrant recognition under § 2 of the Sherman Act," and are presumptively de minimis, Athena may overcome this de minimis presumption by pleading that "the representations were [1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals."  Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc., 108 F.3d 1147, 1151-52 (9th Cir. 1997) (internal quotation marks omitted).

Here, the Court reads the SAC to properly plead the elements for overcoming the de minimis presumption.  Generally, the SAC alleges that Allergan made "false and disparaging comments to Athena's customers and to the general public concerning Athena and its RevitaLash . . . products."  (SAC ¶ 31.)  Specifically, it alleges that Allergan's representations that Athena's "RevitaLash would imminently be 'seized by the FDA,'" and that Athena "would have to 'pay royalties to Allergan to use their ingredient,'" were clearly false because Allergan stated future speculation as present fact.  (Id.)  The SAC also asserts that these false and disparaging statements were clearly material and likely to induce reasonable reliance because Athena "lost substantial sales and revenues as a result of Allergan's anticompetitive conduct."  (Id. ¶ 36.)  Athena persuasively argues that, even if "buyer distrust of a seller's disparaging comments about a rival seller should caution [ ] against attaching much weight to isolated examples of disparagement," Am. Prof'l Testing Serv., 108 F.3d at 1152 (emphasis added), the representations here were pervasive (SAC ¶ 32) and were "especially likely to be relied upon by medi-spas due to their concern that they will be unable to resell their inventory of RevitaLash if the events alleged in Allergan's statements were true."  (Opp'n Br. 9; see

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|

| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |
|---|---|---|---|

also SAC ¶ 12.)[1]  These allegations also suggest that Athena's consumers would have no knowledge of the subject matter, as even physicians prescribing Latisse would have no way of knowing that the patent infringement and regulatory enforcement claims were false.  See TYR Sport Inc. v. Warnaco Swimwear Inc., No. SACV 08-00529-JVS (MLGx), 2009 WL 1769444, at *7 (C.D. Cal. May 27, 2009).  The SAC further alleges that Allergan's representatives began making such disparaging statements at least from the time of the instigation of the first lawsuit against Athena in 2007, and the frequency of these statements has only increased since."  (Opp'n Br. 11, citing SAC ¶ 31.)  Finally, the SAC alleges that these "disparag[ing] [statements have] reached geographically disparate locations in multiple states through its use of a sales representative force many times larger than Athena's."  (Id., citing SAC ¶ 32.)

Accordingly, the Court finds that, at the motion to dismiss stage, the disparagement allegations are sufficient to plead anticompetitive conduct.[2]

### b. Monopoly power

Allergan next contends that Athena has failed to establish that Allergan has "monopoly power," or that there is a "dangerous probability" Allergan will achieve monopoly power, in any relevant market.

Allergan argues that the third and sixth counterclaims should be dismissed because Athena cannot establish that Allergan has monopoly power, or a dangerous probability of achieving monopoly power, in the PGEEP Market.  "Allergan concedes that Athena has alleged a relevant market and has made allegations regarding the revenue generated by Latisse in the first quarter of 2009."  (Reply Br. 12.)  Instead, Allergan challenges the alleged barriers to entry in this single market as "extremely conclusory."  (Id., citing SAC ¶ 26.)  The Court disagrees. The SAC alleges "[s]ubstantial barriers" including "large

---

[1] See also Northeast Airlines, Inc. v. World Airways, Inc., 262 F. Supp. 316, 319 (D.C. Mass. 1966) ("The making of false and disparaging statements about a competitor . . . [is] not within the area of fair and honest competition.") (internal quotation marks omitted).

[2] Notably, Allergan concedes that "Athena may not need to plead its disparagement allegations with Rule 9(b) particularity."  (Reply Br. 10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|

| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. |
|---|---|

sunk costs, the 'lock in' effect, high set-up and switching costs, [and] the difficulties and high costs associated with procuring the constituent chemical compounds . . . ." (SAC ¶ 26.) These presence of these precise barriers is a factor in monopoly power. Image Technical Servs., Inc. v. Eastman Kodak Co., 125 F.3d 1195, 1208 (9th Cir. 1997) ("Common entry barriers include: patents or other legal licenses, control of essential or superior resources, entrenched buyer preferences, high capital entry costs and economies of scale."). Significantly, the SAC provides an explanation for some barriers: "Only two firms located in the United States are publicly known to manufacture prostaglandin analogs for commercial sale." (SAC ¶ 26.)

With this background, the SAC's market share allegations are clearly sufficient to establish monopoly power. According to Athena, paragraph 15 of the SAC alleges that Allergan's "share during the first quarter of 2009 [was] between 65% and 66%." (Id., citing SAC ¶ 15.) Although this allegation does not appear on the face of paragraph 15, it can be easily extrapolated from the alleged sales revenues for Allergan, Athena, and other competitors in the PGEEP Market.[3] An alleged two-thirds market share is more than sufficient to give rise to an inference of monopoly power. Rebel Oil Co., Inc. v. Atl. Richfield Co., 51 F.3d 1421, 1438 (9th Cir. 1995) ("ARCO's market share of 44 percent is sufficient as a matter of law to support a finding of market power, if entry barriers are high and competitors are unable to expand their output in response to supracompetitive pricing."); Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc., 627 F.2d 919, 924-25 (9th Cir. 1980) ("[M]arket shares on the order of 60 per cent to 70 per cent have supported findings of monopoly power.").

At oral argument, Allergan invited the Court to look at the big picture and to determine whether there were sufficient allegations that Allergan in fact had the power to control prices or exclude competitors. See United States v. Grinnell Corp., 384 U.S. 563, 576 (1966). Athena alleges that Allergan has maintained supracompetitive prices as a

---

[3] The SAC alleges first-quarter revenues in 2009 of around $8.24 million for Allergan, $3.3 million for Athena ("approximately 40% of [Allergan's revenues] for the same period of time"), and $1 million for "the four or five remaining companies" ("perhaps 25-25% of Athena's sales"). (SAC ¶ 15.) Therefore, Allergan's $8.24 million share of the $12.54 million market amounts to a market share of roughly 66%.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|
| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |

result of intentionally exploiting imperfect information on the part of consumers. (SAC ¶ 17.) This is not the case of one firm able to set and succeed charging higher prices while the remaining firms continue to sell at lower prices. Rather there is an alleged nexus between price and anticompetitive conduct. From an antitrust standpoint, nothing is more detrimental to consumer welfare than supracompetitive prices sustained through less than competition on the merits.

Similarly, there are allegations of efforts to eliminate Allergan's competitors by using sham litigation as a tool to press competitors to leave the market (id. ¶ 27), pressuring retailers not to purchase these products (id. ¶ 33), offering to buy its customers stock of competitive products if they would discontinue them in favor of Allergan's products (id. ¶ 34), and manipulative use of advertising on internet search engines (id. ¶ 35). And there is also the effect of alleged sham litigation.

Allergan acknowledged at oral argument that market share and barriers to entry are relevant indicia on market power, and that they are pled here. (Id. ¶¶ 15, 26.) But in fact, as noted above, Athena pleads more than this with allegations that go to the core elements of monopoly power. Thus, Athena has a plausible theory to proceed with the single market claims. Twombly, 550 U.S. at 570.

Accordingly, there is no reason to dismiss the third and sixth counterclaims based on the issue of monopoly power.

Allergan also argues that the fourth and fifth counterclaims should be dismissed because Allergan has no market share in the retail market and, by definition, cannot sell Latisse in this market. Athena cites Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297 (3d Cir. 2007), for "the specific scenario presented by Athena's dual-market allegations: the existence of two adjacent markets, one over which the monopolist already possesses dominance, and a second target market that the monopolist views as a threat to its position and therefore seeks to destroy." (Opp'n Br. 17-18.) But Broadcom is distinguishable in that Qualcomm was allegedly "exploiting [its] monopoly [in the CDMA chipset market] to obtain a new monopoly in the UMTS chipset market," rather than to destroy that market. 501 F.3d at 318 (emphasis added). Notably, Qualcomm also admitted to "possess[ing] a share of the United States market for UMTS chipsets of 80 to 100 percent." Id. at 319 n.11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|

| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. |
|---|---|

As such, Athena offers no directly on-point authority to hold Allergan liable for monopolization or attempted monopolization of a market in which Allergan cannot compete. Indeed, the weight of authority holds that a company that does not, and here by definition cannot, compete in a relevant market cannot possess "monopoly power," or the "dangerous probability" of achieving monopoly power, in that market. See, e.g., Mercy-Peninsula Ambulance, Inc. v. County of San Mateo, 791 F.2d 755, 759 (9th Cir. 1986) ("The county performs no health care services. The district court therefore correctly concluded that the county is not a competitor in the health care provision market and cannot be charged with having used market position to exclude competition."); Portney v. CIBA Vision Corp., 593 F. Supp. 2d 1120, 1128-29 (C.D. Cal. 2008) ("'It is axiomatic in antitrust law that a defendant may not be found liable for monopolizing or attempting . . . to monopolize a market unless that defendant is a competitor in the relevant market and his conduct creates a dangerous probability that he will gain a dominant share of the market.'") (quoting Transphase Sys. v. S. Cal. Edison Co., 839 F. Supp. 711, 717 (C.D. Cal. 1993)).[4]

Accordingly, because they are predicated on a flawed theory, the fourth and fifth claims must be dismissed with prejudice.

      c.      Causal antitrust injury

Allergan finally contends that Athena has failed to plead any causal antitrust injury.

The SAC alleges that Allergan has spread misinformation about Athena's RevitaLash (SAC ¶ 31), and that Allergan is selling its Latisse to "people who do not

---

[4] Athena attempts to distinguish Mercy-Peninsula and Portney on the facts, but the legal principle for which they stand is nonetheless applicable here, and has been affirmed in other cases. See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc., 376 F.3d 1065, 1075 (11th Cir. 2004) ("CC does not participate in the Spanish-language radio market. Thus, CC cannot attempt to monopolize that market."); cf. Midwest Gas Servs., Inc. v. Ind. Gas Co., Inc., 317 F.3d 703, 713 (7th Cir. 2003) (holding that a gas utility was not a market participant in the natural gas marketing market, as required to support a monopoly leveraging claim).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx) Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|

| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |
|---|---|---|---|

have the medical condition hypotrichosis"[5] for which Latisse may be prescribed (id. ¶¶ 14-15, 17, 22-24, 27, 69, 80, 87).  The SAC alleges not only that Athena and other competitors have "lost substantial sales and revenues as a result of Allergan's anticompetitive conduct" (id. ¶ 36), and that Allergan's sham litigation has driven competitors from the marketplace (id. ¶¶ 26-27), but also that competition as whole has suffered.  Allegedly, "Allergan has sold its own products at a loss or given them away for free, has offered to buy its customers' remaining supplies of RevitaLash if they would discontinue selling RevitaLash . . . , and has offered customers free advertising, free product, and advertising and marketing subsidies . . ." (id. ¶ 34.); and "Allergan has directly or indirectly purchased keyword search terms containing or constituting Athena's registered marks" (id. ¶ 35).  Thus, the allegations in the SAC give rise to an inference of more than robust competition from a superior product, but rather anticompetitive conduct that has in fact harmed competition and, in turn, threatens to harm consumers.  See Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458 (1993) ("The purpose of the [Sherman] Act is not to protect businesses from the working of the market . . . .  The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself."); Rebel Oil, 51 F.3d at 1433 ("To show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior.").  The SAC explains that, unless Allergan's anticompetitive conduct is enjoined, "competition from retail prostaglandin eyelash products will be eliminated, and consumers will be forced to pay higher prices than they would in a competitive market free of Allergan's monopolizing conduct."[6]  (SAC ¶ 36.)

Accordingly, there is no reason to dismiss the third and sixth counterclaims, the only viable antitrust counterclaims, based on the issue of causal antitrust injury.

---

[5] Hypotrichosis is a medical condition of abnormal hair growth.  Rodney P. R. Dawber & Dominique Van Neste, Hair and Scalp Disorders: Common Presenting Signs, Differential Diagnosis and Treatment (2d ed. 2004).

[6] The SAC also includes allegations of supracompetitive pricing.  (SAC ¶¶ 16-17, 22, 24, 56, 86.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |

      2.      Unfair Competition Counterclaim

      Allergan contends that the seventh claim, the unfair competition claim, should be dismissed because it lacks the particularity required under Rule 9(b) for a claim that is grounded in fraud. The Court agrees.

      As a threshold matter, Rule 9(b) applies because this claim is "grounded in fraud." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). The gravamen of Athena's unfair competition counterclaim is that Allergan has "made false and disparaging comments" regarding Athena's infringement of the patents-in-suit. Even Pom Wonderful LLC v. Ocean Spray Cranberries, Inc., No. CV 09-00565 DDP (RZx), 2009 WL 2151355, at *8 (C.D. Cal. July 16, 2009), cited by Athena, applied the Rule 9(b) pleading standard. Moreover, that the Ninth Circuit has not expressly mandated the application of Rule 9(b) for unfair competition claims brought under the Lanham Act does not preclude courts from doing so. In fact, the Ninth Circuit's precedent in Vess compels courts to apply this heightened pleading standard insofar as these claims are "grounded in fraud." The Court also agrees that this standard should not be relaxed because the alleged disparaging comments were made to consumers and the public and, therefore, cannot be deemed "exclusively within [Allergan's] possession." State of Cal. ex rel. Mueller v. Walgreen Corp., 175 F.R.D. 631, 635 (N.D. Cal. 1997); accord Glen Holly Entm't, Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086, 1095 (C.D. Cal. 1999).

      Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The rule "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991). In other words, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess, 317 F.3d at 1106 (internal quotation marks omitted). In addition, a complaint must "set forth an explanation as to why the statement or omission complained of was false and misleading." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|
| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |

1548 (9th Cir. 1994) (en banc), superseded by statute on other grounds as stated in In re Silicon Graphics, Inc., 970 F. Supp. 746, 754 (N.D. Cal. 1997).

    Athena has not provided sufficient detail to meet the heightened pleading standard. Athena's unfair competition claim relies on statements made by unidentified sales representatives to unidentified "Athena[ ] customers and [ ] the general public" in unspecified "geographically disparate locations including Dallas and Austin, Texas, Arizona, Georgia, and San Francisco, Costa Mesa and Ventura, California" over the course "a number of months and through a number of different speakers" since the initiation of this action almost two years ago. SAC ¶¶ 31-32. Such allegations fail under Rule 9(b). Cf. Celador Int'l, Ltd. v. Walt Disney Co., 347 F. Supp. 2d 846, 855 (C.D. Cal. 2004) (finding that allegations that unidentified company representatives made fraudulent statements "[did] not place Defendants on notice as to who in their organizations may have made the statements" and, therefore, were "not specific enough to meet the requirements of 9(b)"). Presumably, Athena also failed to identify all of the alleged misrepresentations that form the basis of its claim (SAC ¶ 32) ("These comments include, but are not limited to . . . ."), rendering the unfair competition counterclaim further defective under Rule 9(b). Cf. United States v. Chapman Univ., No. SACV 04-1256JVSRCX, 2006 WL 1562231, at *15 (C.D. Cal. May 23, 2006) (striking the language "including, but not limited" as an improper "catchall" in violation of Rule 9(b)).

    Accordingly, the Court dismisses the seventh counterclaim with leave to amend. Although Athena has had multiple attempts to replead this claim, the Court has not previously dismissed this claim by motion, and thus affords Athena an additional, and likely final, opportunity to comply with Rule 9(b).

III.    Motion to Strike

    Although the Court has granted the motion to dismiss, it will address the motion to strike Athena's third and fifth counterclaims to give Athena further guidance as to its pleadings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|

| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |
|---|---|---|---|

As a preliminary matter, the motion is moot as to the fifth counterclaim, which has been dismissed with prejudice. The only issue is whether Athena's third counterclaim that Allergan has monopolized the PGEEP Market is beyond the scope of the court-approved stipulation between the parties. Allergan contends that the FAC did not contain any monopolization claims, only attempted monopolization claims, such that the third counterclaim should be stricken from the SAC because the parties' stipulation only permitted Athena to amend "existing counterclaims" and not to add new counterclaims. (Mot. Br. 5-6, citing SACV 09-328, Docket No. 321.) Athena counters that this motion "can be distilled to one petty issue – the headings on Athena's antitrust counts." (Opp'n Br. 1-2.) Essentially, Athena contends that it did allege monopolization in the FAC within its attempted monopolization claim.

The Court agrees that the FAC contains traces of a monopolization claim (see FAC ¶ 128 ("Allergan's anticompetitive conduct as described herein was undertaken with the specific intent to create and/or maintain a monopoly in the relevant markets.") (emphasis added), which is closely related to the allegations in the FAC and the general theory of recovery under Section 2 of the Sherman Act. The Court perceives no meaningful distinction between this case and the two relevant cases cited by Athena in its opposition. In both cases the court declined to strike new allegations because those additional allegations were presumably minor, see Shirk v. Fifth Third Bancorp, No. 05-cv-049, 2008 WL 4449024, at *14 (S.D. Ohio Sept. 26, 2008), and did not introduce new theories of recovery, see Wallace v. Sys. & Computer Tech. Corp., No. 95-cv-6303, 1997 WL 602808, at *8 (E.D. Pa. Sept. 23, 2007). Indeed, the court in Wallace found "no unfair disadvantage to defendants from allowing the [second amended complaint]" because the "new allegations . . . [were] closely related to the allegations in the first amended complaint and the general theories of recovery remain the same." 1997 WL 602808, at *8. The Court likewise finds no unfair disadvantage to Allergan by allowing the third counterclaim to go forward.

Accordingly, the Court denies Allergan's motion to strike as moot with respect to the fifth counterclaim and as improper with respect to the third counterclaim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx)<br>Consolidated with SACV 09-328 | Date | September 16, 2009 |
|---|---|---|---|

| Title | Allergan, Inc. v. Athena Cosmetics, Inc., et al. | | |
|---|---|---|---|

IV.     Conclusion

    For the foregoing reasons, the Court GRANTS the motion to dismiss with prejudice as to the fourth and fifth counterclaims, DENIES the motion to dismiss as to the third and sixth counterclaims, GRANTS the motion to dismiss with leave to amend as to the seventh counterclaim, and DENIES the motion to strike.

    Athena shall have twenty days to file amended counterclaims.

    IT IS SO ORDERED.

|  | 0 | : | 00 |
|---|---|---|---|
| Initials of Preparer | sdm | | |