ORIGINAL

1   JEFFREY T. THOMAS, SBN 106409
       jtthomas@gibsondunn.com
2   JOHN N. CARTER, SBN 246886
       jcarter@gibsondunn.com
3   GIBSON, DUNN & CRUTCHER LLP
    3161 Michelson Drive
4   Irvine, California 92612-4412
    Telephone:  (949) 451-3800
5   Facsimile:   (949) 451-4220

6   T. KEVIN ROOSEVELT, SBN 205485
       kroosevelt@fwtrl.com
7   FINLAYSON WILLIAMS TOFFER
       ROOSEVELT & LILLY LLP
8   15615 Alton Parkway, Suite 250
    Irvine, California 92618
9   Telephone:  (949) 759-3810
    Facsimile:   (949) 759-3812

10

11  Attorneys for Plaintiffs ALLERGAN, INC.;
    MURRAY A. JOHNSTONE, M.D.; and
    DUKE UNIVERSITY

12

13              UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15                    SOUTHERN DIVISION

16  ALLERGAN, INC.;                          Lead Case :
    MURRAY A. JOHNSTONE, M.D.; and           CASE NO.: SACV07-1316 JVS (RNBx)
17  DUKE UNIVERSITY,
                                             Consolidated with:
18              Plaintiffs,                   CASE NO. SACV09-0328 JVS (RNBx)

19         v.
                                             CONSOLIDATED AMENDED
20  ATHENA COSMETICS, INC.;                  COMPLAINT FOR PATENT
    PHARMA TECH INTERNATIONAL,               INFRINGEMENT, VIOLATION OF
21  INC; NORTHWEST COSMETIC                  CALIFORNIA BUSINESS AND
    LABORATORIES, LLC; COSMETIC              PROFESSIONS CODE
22  ALCHEMY, LLC; METICS, LLC;               SECTION 17200 ET SEQ., LANHAM
    PRODUCT INNOVATIONS, LLC;                ACT SECTION 43(a), CALIFORNIA
23  STELLA INTERNATIONAL, LLC;               BUSINESS AND PROFESSIONS
    LIFETECH RESOURCES, LLC; SKIN            CODE SECTION 17500 AND
24  RESEARCH LABORATORIES;                   DEMAND FOR JURY TRIAL
    ROCASUBA, INC; PETER THOMAS
25  ROTH LABS LLC; PETER THOMAS
    ROTH, INC.; and R & G BUSINESS,
26  LLC,

27              Defendants.

28

Plaintiffs, Allergan, Inc. ("Allergan"); Murray A. Johnstone, M.D. ("Dr. Johnstone"); and Duke University (together "Plaintiffs"), for their Complaint against defendants, Athena Cosmetics, Inc. ("Athena Cosmetics"); Pharma Tech International, Inc. ("Pharma Tech"); Northwest Cosmetic Laboratories, LLC ("Northwest Cosmetic"); Cosmetic Alchemy, LLC ("Cosmetic Alchemy"); Metics, LLC ("Metics"); Product Innovations, LLC ("PI"); Stella International, LLC ("Stella"); Lifetech Resources LLC ("Lifetech"); Skin Research Laboratories, Inc. ("SRL"); Rocasuba, Inc. ("Rocasuba"); Peter Thomas Roth Labs LLC and Peter Thomas Roth, Inc. (together "PTR"); and R & G Business, LLC ("R&G") (collectively "Defendants"), allege upon personal knowledge with respect to themselves and their own acts, and upon information and belief with respect to all other matters, as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, in that this is a civil action for patent infringement arising under the Patent Laws of the United States, Title 35, United States Code, and for violations of the Lanham Act, 15 U.S.C. § 1125(a).

2.     This Court has subject matter jurisdiction over Plaintiffs' unfair competition law claims (California Business and Professions Code § 17200 *et seq.*) and state false advertising claims (California Business and Professions Code § 17500) pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

3.     Venue is proper in this district and division under 28 U.S.C. §§ 1391 and 1400.

4.     This Court has personal jurisdiction over Defendants by virtue of Defendants' manufacture, marketing, promotion, offers for sale, sales, and distribution of products, including the products which are the subject of this Complaint, throughout the State of California, in this District and in this Division.  Defendants have also placed or helped to place, and are continuing to place, products into the

stream of commerce within the United States, within California, in this District and in this Division, and it is reasonable to expect that such products will continue to enter and be used by consumers in California, including in this District and in this Division. In addition, this Court has personal jurisdiction over Lifetech and PI by virtue of their being California limited liability companies.

## THE PARTIES

5.    Allergan is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2525 Dupont Drive, Irvine, California.

6.    Dr. Johnstone is an individual residing in Seattle, Washington.

7.    Duke University is one of the world's leading institutions for education, research, and medical care, and is located in Durham, North Carolina.

8.    Athena Cosmetics is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business at 701 North Green Valley Parkway, Henderson, Nevada.  Allergan is informed and believes and thereon alleges that Athena is the successor-in-interest to Athena Cosmetics Corporation.

9.    Cosmetic Alchemy is a limited liability company with its principal place of business at 21827 Scottsdale Road, Scottsdale, Arizona.

10.    Pharma Tech is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 21 Just Road, Fairfield, New Jersey.

11.    Northwest Cosmetic is a limited liability company existing under the laws of the State of Idaho, with its principal place of business at 200 Technology Drive, Idaho Falls, Idaho.

12.    Stella is a limited liability company organized and existing under the laws of the State of Arizona, with its principal place of business at 21827 North Scottsdale Road, Scottsdale, Arizona.

Gibson, Dunn &
Crutcher LLP

3

13.     PI is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 1850 Mt. Diablo Boulevard, Walnut Creek, California.

14.     Metics is a limited liability company organized and existing under the laws of the State of Arizona, with its principal place of business at 2338 West Royal Palm Road, Phoenix, Arizona.

15.     SRL is a corporation organized and existing under the laws of the State of Connecticut.

16.     Lifetech is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 9540 Cozycroft Avenue, Chatsworth, California.

17.     Rocasuba is a business entity existing under the laws of the State of Massachusetts, with its principal place of business at 133 Falmouth Road, Mashpee, Massachusetts.

18.     Peter Thomas Roth Labs LLC is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business at 460 Park Avenue, New York, New York.

19.     Peter Thomas Roth, Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 131 West 35th Street, New York, New York.

20.     R&G is a limited liability company organized and existing under the laws of the State of Arizona, with its principal place of business 5601 East Beverly Street, Tucson, Arizona.

## GENERAL ALLEGATIONS

21.     Allergan manufactures and sells LUMIGAN® ophthalmic solution ("Lumigan"), a medication approved by the Food and Drug Administration ("FDA") to lower intraocular eye pressure in people with open-angle glaucoma or ocular hypertension.  Lumigan eye drops contain the active ingredient bimatoprost, which is

in a category of compounds known as prostamides. Prostamides are related to a category of compounds known as prostaglandins ("PG").

22.     There are several different types of PGs, which are categorized by their chemical structures and are named by letters. For example, there are PGAs, PGEs, PGFs, PGIs, etc. In addition to natural PGs, there are synthetic (i.e., man-made) compounds that have chemical structures similar to natural PGs. Prostamides and PG esters are two different categories of such synthetic compounds.

23.     There are two other medications on the market containing PGs that have been approved by the FDA to lower intraocular eye pressure in people with open-angle glaucoma or ocular hypertension: Xalatan$^{(TM)}$ and Travatan$^{(TM)}$. These products have been approved by the FDA only for the treatment of glaucoma, and both require a physician's prescription before they may be sold.

24.     On December 26, 2008, the FDA approved an Allergan product named LATISSE$^{(TM)}$ (bimatoprost ophthalmic solution) 0.03% as a novel treatment for hypotrichosis of the eyelashes. Eyelash hypotrichosis is another name for having inadequate or not enough eyelashes. Other than LATISSE$^{(TM)}$, PGs, PGF esters and prostamides have only been approved by the FDA for use as a prescription medicine to lower intraocular eye pressure in people with open-angle glaucoma or ocular hypertension.

25.     Dr. Johnstone filed a patent application claiming the use of PGFs to grow hair, and specifically eyelashes. Application No. 09/366,656 was filed in the United States Patent and Trademark Office on August 3, 1999, claiming the benefit of Provisional Application No. 60/037,237, filed on February 4, 1997.

26.     On July 17, 2001, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,262,105 (the "'105 patent"), entitled "Method of Enhancing Hair Growth" to Dr. Johnstone. A true and correct copy of the '105 patent is attached hereto as Exhibit A. At that time, Dr. Johnstone became the sole and exclusive owner of the '105 patent.

27.     On June 29, 2006, Allergan entered into a Patent License Agreement with Dr. Johnstone, which grants to Allergan the exclusive right to make, use, and vend the patented invention throughout the world.  A true and correct copy of the Patent License Agreement is attached hereto as Exhibit B.

28.     On January 15, 2003, Patent Application No. 10/345,788 was filed in the United States Patent and Trademark Office, claiming the benefit of Provisional Application No. 60/354,425, filed on February 4, 2002.

29.     On April 1, 2008, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,351,404 (the "'404 patent").  A true and correct copy of the '404 patent is attached hereto as Exhibit C.  Allergan is the sole assignee of the '404 patent.

30.     On May 26, 2005, Patent Application No. 11/138,097 was filed in the United States Patent and Trademark Office, claiming the benefit of Provisional Application No. 60/193,645, filed on March 31, 2000.

31.     On June 17, 2008, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,388,029 (the "'029 patent").  A true and correct copy of the '029 patent is attached hereto as Exhibit D.  Duke University is the sole assignee of the '029 patent.

32.     On December 18, 2007, Allergan entered into a Patent License Agreement with Duke University, which grants to Allergan the exclusive right to make, use, and vend the patented invention throughout the world for treating the loss or promoting the growth of eyelashes and/or eyebrows.  A true and correct copy of the Patent License Agreement is attached hereto as Exhibit E.

33.     Defendants Athena Cosmetics, Cosmetic Alchemy, Stella, PI, Metics, SRL, Lifetech, Rocasuba, PTR, and R&G have been marketing and selling hair and/or eyelash growth products with prostamides, PGF esters and/or PGFs as the active ingredient.  For example, Athena Cosmetics is marketing, promoting and selling products named RevitaLash and Hair by RevitaLash; Cosmetic Alchemy is marketing,

promoting and selling products named LiLash and LiBrow; Stella, PI and Metics are marketing, promoting and selling products named RenewLash and RenewBrow; SRL and Lifetech are marketing, promoting and selling a product named NeuLash; Rocasuba, and Lifetech are marketing, promoting and selling a product named Rapidlash Eyelash Renewal Serum; PTR has been marketing, promoting and selling a product called Peter Thomas Roth Lashes To Die For; and R&G is marketing, promoting and selling a product named DabaLash.

34.     Plaintiffs are informed and believe that Pharma Tech manufactures and sells the compound that is the active ingredient in Athena Cosmetics' RevitaLash and Hair by RevitaLash products.  Plaintiffs are further informed and believe that Pharma Tech promotes the use of this compound in eyelash growth products through marketing.

35.     Plaintiffs are informed and believe that Northwest Cosmetic manufactures Athena Cosmetics' eyelash and hair growth products, RevitaLash and Hair by RevitaLash.  On information and belief, Northwest Cosmetic specifically promotes the use of Athena's product for use in a manner that directly infringes the '105, the '404, and the '029 Patents.

36.     Purchasers of Defendants' products directly infringe the '105, the '404, and/or the '029 patents by using those products in a manner described by the claims of the '105, the '404, and/or the '029 patents.

37.     Defendants encourage the direct infringement of the '105, the '404, and/or the '029 patents.  Defendants (other than Pharma Tech) develop, market, promote, and sell products for eyelash and hair growth with prostamides, PGF esters, and/or PGFs as an ingredient, and promote their products for use in a manner covered by the claims of the '105, the '404, and/or the '029 patents and provide instructions for use of those products in a manner that directly infringes the '105, the '404, and/or the '029 patents.  Defendants (other than Pharma Tech) do so with the knowledge of the existence of the '105, the '404, and/or the '029 patents and with the knowledge

and intent that their products will be used by consumers in a manner that directly infringes the '105, the '404, and/or the '029 patents.

38.    Pharma Tech manufactures, markets, promotes, and sells a compound described in the '029 patent to Athena for use in eyelash and hair growth products. Pharma Tech promotes the use of this compound in a manner covered by the claims of the '029 patent. Pharma Tech does so with the knowledge of the existence of the '029 patent and with the knowledge and intent that the products it manufactures and sells will be the active ingredient in products that will be used by consumers in a directly infringing manner.

39.    Northwest Cosmetic manufactures Athena's products for eyelash and hair growth. Northwest Cosmetic manufactures this product with the knowledge of the existence of the '105, the '404 and the '029 patents and with the knowledge and intent that the products it manufactures will be used by consumers in a directly infringing manner.

40.    The eyelash growth products manufactured and sold by Defendants (other than Pharma Tech) have no substantial noninfringing use.

41.    The compound Pharma Tech sells to Athena is designed especially for Athena and its eyelash and hair growth products. Pharma Tech knows that its compound is used as the active ingredient in Athena's eyelash and hair growth products, and Pharma Tech further knows that the eyelash and hair growth products cannot be used in any substantial way that does not infringe the '029 patent. Plaintiffs are further informed and believe that the compound Pharma Tech sells to Athena has no substantial noninfringing use.

42.    Defendants recklessly disregard the '105, the '404 and '029 patents in their development, manufacturing, marketing, promotion, and sale of eyelash and hair growth products with prostamides, PGF esters and/or PGFs as an ingredient (and in the case of Pharma Tech, by supplying others with compounds for use in eyelash and hair growth products and promoting the use of the compounds in such products).

Gibson, Dunn & Crutcher LLP

Defendants proceed despite an objectively high likelihood that their actions contribute to and induce infringement of the '105, the '404 and the '029 patents. All Defendants either know or should know that their actions risk infringement of the '105, the '404 and the '029 patents.

43.   In violation of federal and California State laws regulating the manufacture and sale of prescription medicines, Defendants are manufacturing and selling these products without FDA approval and/or without requiring a prescription.

44.   Furthermore, in selling its eyelash growth product, RevitaLash, Athena Cosmetics has engaged in, and continues to engage in, false advertising. Specifically, Athena Cosmetics publishes testimonials and safety claims that misrepresent the efficacy and safety of the product. For example, Athena Cosmetics has continued to publish testimonials and safety studies related to earlier RevitaLash formulations after materially changing the product's ingredients. Athena Cosmetics also misleading describes RevitaLash as a cosmetic, and falsely suggests that the product is comparatively safer than "drug" products, including Allergan's product, Latisse.

45.   Since its introduction to the market, RevitaLash has had at least four different formulations. Originally, the product contained bimatoprost as its active ingredient. Athena Cosmetics switched the active ingredient from bimatoprost to triflouromethyl dechloro ethylprostenolamide ("Travamide" or "TDE") in or around November 2007 after the FDA seized a competing product sold by Jan Marini, which also contained bimatoprost. In or around September 2010, the company again changed the active ingredient of RevitaLash from Travamide to isopropyl cloprostenate. And in or around July 2011, the company again changed the active ingredient of RevitaLash from isopropyl cloprostenate to dechloro dihydroxy difluoro ethylcloprostenolamide.

46.   Despite the fact that Athena Cosmetics has changed the RevitaLash formulation several times, the testimonials and safety studies that Athena references in its RevitaLash promotional materials have remained materially unchanged. For

example, from at least May 2010 to July 2011, time periods encompassing at least three different RevitaLash formulations, before and after the change to and from isopropyl cloprostenate, the "FAQ" section on Athena Cosmetics' RevitaLash website contained the exact same language regarding safety studies:

> RevitaLash® has been tested in numerous studies by reputable, independent research laboratories and in every case been found to be very safe. Two cosmetic safety consultants (one domestic and one international) have independently reviewed the safety data on RevitaLash® and concluded that RevitaLash® is safe. Independent ophthalmologists have also reviewed the safety data on RevitaLash® and concluded that RevitaLash® is safe.

47.     Similarly, through the "Testimonial" section of Athena Cosmetics' RevitaLash website, Athena Cosmetics published the exact same testimonials during this same period, including the following:

> My sneaky sister had lush, long lashes that I knew she hadn't inherited from anyone in our family. My daughter revealed to me that her secret was Revitalash. I noticed positive results about 3 weeks after beginning to use it on a nightly basis and I'm thrilled.  I now have "bump your sunglasses" lashes!
>
> *       *       *
>
> I can't tell you how thrilled I am with Revitalash. I've been using it for over 4 months and I'm still on my first tube of product. I have strangers comment on how long and beautiful my eyelashes look. My eyelashes used to be short and very thin and getting thinner all the time. Now I have to look down until my mascara dries or else I'll get in on the upper part of my eyelid. My friends can't believe it and neither can I.

48.     Athena Cosmetics' use of outdated testimonials and safety studies is false and misleading because Travamide, isopropyl cloprostenate, and dechloro dihydroxy

difluoro ethylcloprostenolamide have not been extensively studied, so one cannot accurately predict how the differences in their chemical structure affect their pharmacology and clinical efficacy, as well as the rate and magnitude of their side effects. Thus, Athena has no basis to assume that the safety and efficacy data of one compound would support the safety and efficacy of the others.

49.     Athena Cosmetics also engages in false advertising by suggesting that RevitaLash is safer than a product that requires FDA approval. Indeed, Athena promotes RevitaLash by implicitly comparing it to Allergan's own (patented and FDA-approved) eyelash growth product, Latisse. Athena Cosmetics suggests that because RevitaLash is not a prescription drug, it is somehow safer than a product that has gone through the full FDA approval process. These advertisements further mislead consumers by creating a misconception that RevitaLash is not also a drug.

50.     For example, in a reference sheet distributed by an Athena Cosmetics account executive in September 2009, Athena Cosmetics states, "If a patient has a disease, prescribe a drug. If your client simply wants beautiful natural eyelashes, recommend RevitaLash." In the same reference sheet, Athena Cosmetics also claims that "RevitaLash . . . has an excellent safety record based on extensive testing and consumer use" while "the only eyelash Rx drug available requires a prescription, is intended to treat a rare disease/medical condition (hypotrichosis), and contains an ingredient that is known to be associated with possible serious and undesirable side effects (which were the subject of a recent FDA warning letter.)."

51.     Additionally, Athena Cosmetics recently hosted a webinar on June 13, 2011. The program materials include a PowerPoint presentation, which contained a slide with the question: "Is the new [RevitaLash] formula any more irritating as [sic] the old product and Latisse?" In one of the bullet points below this question, Athena Cosmetics stated, "Latisse is a prescription and there are several disclosures because it is a pharmaceutical."

52.     These advertisements falsely suggest that RevitaLash is comparatively

safer than Latisse.  Indeed, the safety comparisons with Latisse suggest to consumers

that Athena Cosmetics has conducted safety tests on RevitaLash that are at least as

rigorous as the clinical tests to which Latisse has been subjected.  These claims made

by Athena Cosmetics are unsubstantiated and untrue.

53.     As part of its deceptive promotional scheme, Athena Cosmetics explicitly

labels RevitaLash as a "cosmetic," and as not a "drug."  For example, in a March 20,

2009 memorandum, titled "Response to Rumors," Athena Cosmetics sets forth the

following "rumor" and the company's approved response:

> **Rumor:**  Because RevitaLash® is a cosmetic, it is not as safe as an FDA
> approved drug.
>
> **Fact:**  Drugs are approved by the FDA; cosmetic products like
> RevitaLash® are not.
>
> **Explanation:**  The FDA requires cosmetic manufacturers to substantiate
> the safety of their products.  Athena Cosmetics has a wealth of date
> substantiating the safety of RevitaLash®.  RevitaLash® is formulated
> with a viscosity agent, so it stays where it is applied at the base of the
> upper eyelashes and does not drip or splash into the eye or to other areas.
> Multiple studies have shown RevitaLash® does not get into the eye when
> used as directed.
>
> RevitaLash® is a cosmetic product that incorporates functional cosmetic
> ingredients with the sole intent of improving the appearance and beauty
> of the eyelashes.

54.     Additionally, in an email sent in January 2009 to RevitaLash resellers and

customers, Athena Cosmetics attached a "RevitaLash Fact Sheet" that makes the

following claims:

> 1)     RevitaLash is not a drug and does not require a prescription.
>
> RevitaLash <u>does not</u> contain a prostaglandin analog (the subject of much

concern and discussion since the removal of another eyelash product that previously contained that ingredient.)  RevitaLash contains a prostamide (TDE) (not a drug) and delivers excellent results.

2)      RevitaLash is a cosmetic that can help anyone achieve the appearance of longer, thicker, fuller lashes.

3)      RevitaLash is not FDA approved because it is a cosmetic and cosmetics do not require FDA approval.  RevitaLash is not intended to treat or cure any medical condition.

55.     On the RevitaLash website, as of July 2011, Athena Cosmetics continues to advertise its product as "a proprietary blend of proven functional *cosmetic* ingredients pioneered by Athena . . . ." (emphasis added).  On the "Frequently Asked Questions" page of the website, Athena Cosmetic includes the question:  "Is RevitaLash FDA Approved?"  As an answer, the Athena Cosmetics continues to state that, "Cosmetic products are not cleared or approved by the FDA."

56.     By advertising RevitaLash as only a cosmetic, Athena Cosmetics misleads consumers as to its relative safety.  Furthermore, the advertisements and promotional materials that claim RevitaLash is not a drug are literally false in light of the definition of "drug" in the Food, Drug, and Cosmetic Act ("FDCA") and under the California Health and Safety Code.  Additionally, a prostamide is a type of prostaglandin analog, and Athena Cosmetics' explicit representations to the contrary are false.  Athena Cosmetics misleads consumers regarding the actual drug status of the RevitaLash and accompanying safety concerns.  These statements have actually deceived consumers, and this deception affects their purchasing decision.  Consumers would be less likely to purchase RevitaLash if it were properly advertised and sold as a drug, and/or if its relative safety were properly represented.

57.     As a result of Athena Cosmetics' false advertising, Allergan has suffered and will continue to suffer damage to its business, reputation, and goodwill, and the

1  loss of sales and profits as a result of direct diversion of sales and a lessening of

2  goodwill associated with Latisse.

### FIRST CLAIM FOR RELIEF

**(Patent Infringement – United States Patent No. 6,262,105 –**

**Against Defendants Athena Cosmetics, Pharma Tech, Northwest**

**Cosmetic, Cosmetic Alchemy, Stella, PI, Metics, and R&G)**

58.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 57 above, as if fully set forth herein.

59.     In violation of 35 U.S.C. § 271(b), Athena Cosmetics, Pharma Tech, Northwest Cosmetic, Cosmetic Alchemy, Stella, PI, Metics, and R&G have actively induced the infringement of one or more claims of the '105 patent.

60.     In violation of 35 U.S.C. § 271(c), Athena Cosmetics, Pharma Tech, Northwest Cosmetic, Cosmetic Alchemy, Stella, PI, Metics, and R&G have contributed to the infringement of one or more claims of the '105 patent.

61.     The infringement of the '105 patent by Athena Cosmetics, Pharma Tech, Northwest Cosmetic, Cosmetic Alchemy, Stella, PI, Metics, and R&G has been willful and wanton.

62.     Allergan and Dr. Johnstone have suffered and will continue to suffer serious irreparable injury unless Athena Cosmetics', Pharma Tech's, Northwest Cosmetic's, Cosmetic Alchemy's, Stella's, PI's, Metics', and R&G's infringement of the '105 patent is enjoined.

### SECOND CLAIM FOR RELIEF

**(Patent Infringement – United States Patent No. 7,351,404 –**

**Against Defendants Athena Cosmetics, Pharma Tech,**

**and Northwest Cosmetic)**

63.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 62 above, as if fully set forth herein.

Gibson, Dunn & Crutcher LLP

64. In violation of 35 U.S.C. § 271(b), Athena Cosmetics, Pharma Tech, and Northwest Cosmetic have actively induced the infringement of one or more claims of the '404 patent.

65. In violation of 35 U.S.C. § 271(c), Athena Cosmetics, Pharma Tech, and Northwest Cosmetic have contributed to the infringement of one or more claims of the '404 patent.

66. The infringement of the '404 patent by Athena Cosmetics, Pharma Tech, and Northwest Cosmetic has been willful and wanton.

67. Allergan has suffered and will continue to suffer serious irreparable injury unless Athena Cosmetics', Pharma Tech's, and Northwest Cosmetic's infringement of the '404 patent is enjoined.

### THIRD CLAIM FOR RELIEF

**(Patent Infringement – United States Patent No. 7,388,029 –**

**Against Defendants Athena Cosmetics, Pharma Tech,**

**Northwest Cosmetic, and R&G)**

68. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 67 above, as if fully set forth herein.

69. In violation of 35 U.S.C. § 271(b), Athena Cosmetics, Pharma Tech, Northwest Cosmetic, and R&G have actively induced the infringement of one or more claims of the '029 patent.

70. In violation of 35 U.S.C. § 271(c), Athena Cosmetics, Pharma Tech, Northwest Cosmetic, and R&G have contributed to the infringement of one or more claims of the '029 patent.

71. The infringement of the '029 patent by Athena Cosmetics, Pharma Tech, Northwest Cosmetic, and R&G has been willful and wanton.

72. Allergan and Duke University have suffered and will continue to suffer serious irreparable injury unless Athena Cosmetics', Pharma Tech's, Northwest Cosmetic's, and R&G's infringement of the '029 patent is enjoined.

Gibson, Dunn & Crutcher LLP

## FOURTH CLAIM FOR RELIEF

### (Violation Of California Business And Professions Code § 17200 *et seq.* Against All Defendants)

73.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 72 above, as if fully set forth herein.

74.     All Defendants have violated California Business and Professions Code § 17200 *et seq.* by unlawfully marketing, selling, and distributing hair and/or eyelash growth products without a prescription, without an approved new drug application on file with the FDA or the California Department of Health Services, and in violation of state and federal misbranding laws.

75.     The hair and/or eyelash growth products manufactured, marketed, sold, and distributed by Defendants constitute "drugs" under California and federal law, namely California Health and Safety Code § 109925(c), California Health and Safety Code § 110110, 21 U.S.C. § 231(g)(1) and 21 C.F.R. § 310.527(a), because they are intended to affect the structure and/or function of the human body – specifically hair length, shape, thickness, and appearance – and are promoted by Defendants and used by consumers for that purpose.

76.     The hair and/or eyelash growth products manufactured, marketed, sold, and distributed by Defendants can result in significant adverse reactions and substantial harm.  These adverse reactions include but are not limited to: lowering intraocular pressure, intraocular inflammation, eye pruritis, conjunctival hyperemia, macular edema, erythema of the eyelid, iris and lid pigmentation, and unwanted hair growth.  Use of these products could be particularly harmful when used by pregnant or nursing mothers and by pediatric patients.  As a result, these products – if used at all – should only be used at the direction and under the supervision of a licensed physician.

77.     The hair and/or eyelash growth products manufactured, marketed, sold, and distributed by Defendants are not generally recognized among experts as safe and effective for the purpose of hair and/or eyelash growth.  On information and belief, no

Gibson, Dunn &
Crutcher LLP

Defendant has sufficiently tested its hair and/or eyelash growth products for safety and effectiveness in hair and/or eyelash growth, nor has any expert in the field sufficiently examined Defendants' hair and/or eyelash growth products for safety and effectiveness.  Because prostaglandins and prostamides function like hormones, any slight modification to their chemical structures can cause drastically different results; it is imperative that any product meant for hair and/or eyelash growth that contains a prostaglandin or prostamide submit to rigorous testing prior to market entry.  Further, and for this reason, the safety of and effectiveness of Defendants' hair and/or eyelash growth products cannot be implied from the safety and effectiveness of Latisse.

78.    The hair and/or eyelash growth products manufactured, marketed, sold, and distributed by Defendants have not been used for the purpose of hair and/or eyelash growth under the conditions directed to a material extent or for a material time such that they have become recognized as safe and effective.  On information and belief, none of these hair and/or eyelash growth products, in their current formulations, have been available for more than a few years.  And these products vary in chemical structure and in the quantity of directed application of their respective active ingredients.

79.    The hair and/or eyelash growth products manufactured, marketed, sold, and distributed by Defendants also fail to comply with state and federal labeling requirements.  These hair and/or eyelash growth product labels fail to set forth the established name or quantity of each active ingredient, fail to provide sufficient warnings, and fail to indicate that federal and state regulations require their prescription dispensation.

80.    The hair and/or eyelash growth products manufactured, marketed, sold, and distributed by Defendants constitute "new drugs" pursuant to California and federal law, namely California Health and Safety Code § 109980; and 21 U.S.C. § 321(p)(1) and 21 C.F.R. § 310.527(a) as incorporated by California Health and Safety Code § 110110.

Gibson, Dunn & Crutcher LLP

81.     Defendants Athena Cosmetics, Cosmetic Alchemy, Stella, PI, Metics, SRL, Lifetech, Rocasuba, Northwest Cosmetic, PTR, and R&G have violated California Health and Safety Code § 111470 by selling their hair and/or eyelash growth products without requiring a prescription.

82.     Defendants Athena Cosmetics, Cosmetic Alchemy, Stella, PI, Metics, SRL, Lifetech, Rocasuba, Northwest Cosmetic, PTR, and R&G have violated California Health and Safety Code § 111550 by marketing, selling, and distributing their hair and/or eyelash growth products without an application approved by the FDA or the California State Department of Health Services.

83.     All Defendants have violated California Business and Professions Code § 4163 by furnishing hair and/or eyelash growth products without requiring a prescription and without an application approved by the FDA or the California State Department of Health Services.

84.     On information and belief, all Defendants have violated California Health and Safety Code §§ 110398, 111440, and 111445 by failing to comply with state and federal misbranding regulations – specifically California Health and Safety Code §§ 111355, 111375 and 21 C.F.R. § 310.527 (by and through incorporation in California Health and Safety Code § 110110).  Further, Defendants Athena Cosmetics, Cosmetic Alchemy, Northwest Cosmetic, Stella, PI, Metics, SRL, Lifetech, Rocasuba, PTR, and R&G have violated California Health and Safety Code § 111475 by failing to comply with the requirements of California Health and Safety Code § 111490 and by violating California Health and Safety Code § 111470.

85.     Defendants' unfair competition has resulted in and continues to result in serious and irreparable injury to Allergan, including but not limited to lost sales, revenue, market share, and asset value.

Gibson, Dunn & Crutcher LLP

18

## FIFTH CLAIM FOR RELIEF

### (False Advertising and Unfair Competition, Lanham Act § 43(a),

### Against Defendant Athena Cosmetics)

86.   Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 85 above, as if fully set forth herein.

87.   In selling its eyelash growth products, Athena Cosmetics has engaged in, and continues to engage in, false advertising and unfair competition in violation of Section 43(a) of the Lanham Act.  Specifically:

      (1)   Athena Cosmetics falsely advertises RevitaLash by publishing out-of-date testimonials and referencing out-of-date safety studies, which constitutes a literal falsehoods in violation of the Lanham Act because those testimonials and studies were based on a prior formulation of the product;

      (2)   Athena Cosmetics falsely advertises RevitaLash as comparatively safer than Latisse and other FDA approved products, which constitutes a literal falsehood in violation of the Lanham Act;

      (3)   Athena Cosmetics falsely advertises RevitaLash as a cosmetic, which constitutes a misleading representation in violation of the Lanham Act because it falsely suggests that RevitaLash is safer than FDA approved products, and it is unclear that RevitaLash is not also a drug from these advertisements; and

      (4)   Athena Cosmetics falsely advertises RevitaLash as not a drug, which constitutes a literal falsehood in violation of the Lanham Act in light of the definition of "drug" in the FDCA and under the California Health and Safety Code.

88.   Athena Cosmetics' false advertisements were circulated throughout the United States in interstate commerce and falsely misrepresent the nature, characteristics or qualities of RevitaLash and/or Latisse, or create a substantial

Gibson, Dunn & Crutcher LLP

likelihood of confusion regarding the nature, characteristics or qualities of RevitaLash and/or Latisse.  These statements are material, are explicitly and/or impliedly false, and violate 15 U.S.C. § 1125(a)(1)(B).

89.    Athena Cosmetics' false and misleading statements are likely to mislead and deceive consumers into purchasing Athena Cosmetic's RevitaLash instead of Latisse.  Athena Cosmetics' conduct is willful, deliberate and in bad faith.

90.    Athena Cosmetics' illegal conduct is continuous and ongoing, and Plaintiffs suffering and will continue to suffer irreparable harm, for which Allergan has no adequate remedy at law, unless Athena Cosmetics is enjoined from making false and misleading statements regarding the characteristics of RevitaLash and Latisse.

91.    As a direct and proximate result of Athena Cosmetics' acts of unfair competition and false advertising, Allergan has suffered and will continue to suffer damage to its business, reputation, and goodwill, and the loss of sales and profits it would have made but for Athena Cosmetics' acts, in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### (California False Advertising, Common Law and Cal. Bus. & Prof. Code § 17500 *et seq.* Against Defendant Athena Cosmetics)

92.    Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 91 above, as if fully set forth herein.

93.    Athena Cosmetics' statements constitute untrue and/or misleading advertising, which it knew or should have known were untrue at the time the statements were made, and therefore violate California Business and Professions Code Section 17500 *et seq.*

94.    Athena Cosmetics' false advertising has injured and continues to injure Allergan with no adequate remedy at law.  Allergan is entitled to a permanent injunction prohibiting Athena Cosmetics' wrongful conduct.

Gibson, Dunn & Crutcher LLP

## **PRAYER FOR RELIEF**

WHEREFORE, Allergan, Dr. Johnstone, and Duke University respectfully request that this Court enter judgment in their favor and against Defendants and grant the following relief:

A.      A judgment that Athena Cosmetics, Pharma Tech, Northwest Cosmetic, Cosmetic Alchemy, Stella, PI, Metics, and R&G have induced the infringement of the '105 patent in violation of 35 U.S.C. § 271(b);

B.      A judgment that Athena Cosmetics, Pharma Tech, Northwest Cosmetic, Cosmetic Alchemy, Stella, PI, Metics, and R&G have contributed to the infringement of the '105 patent in violation of 35 U.S.C. § 271(c);

C.      A judgment that Athena Cosmetics, Pharma Tech, and Northwest Cosmetic have induced the infringement of the '404 patent in violation of 35 U.S.C. § 271(b);

D.      A judgment that Athena Cosmetics, Pharma Tech, and Northwest Cosmetic have contributed to the infringement of the '404 patent in violation of 35 U.S.C. § 271(c);

E.      A judgment that Athena Cosmetics, Pharma Tech, Northwest Cosmetic, and R&G have induced the infringement of the '029 patent in violation of 35 U.S.C. § 271(b);

F.      A judgment that Athena Cosmetics, Pharma Tech, Northwest Cosmetic, and R&G have contributed to the infringement of the '029 patent in violation of 35 U.S.C. § 271(c);

G.      A judgment that Athena Cosmetics', Pharma Tech's, Northwest Cosmetic's, Cosmetic Alchemy's, Stella's, PI's, Metics', and R&G's infringement of the '105 patent has been willful and wanton;

H.      A judgment that Athena Cosmetics', Pharma Tech's, and Northwest Cosmetic's infringement of the '404 patent has been willful and wanton;

Gibson, Dunn & Crutcher LLP

1      I.      A judgment that Athena Cosmetics', Pharma Tech's, Northwest

2   Cosmetic's, and R&G's infringement of the '029 patent has been willful and wanton;

3      J.      A judgment that all Defendants have violated California Business and

4   Professions Code § 17200 *et. seq.*;

5      K.      A judgment that Athena Cosmetics has engaged in unfair competition and

6   false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

7      L.      A preliminary and permanent injunction, pursuant to California Business

8   and Professions Code § 17203, enjoining all Defendants from any further act of unfair

9   competition;

10     M.      An order, pursuant to California Business and Professions Code § 17203,

11  awarding restitution to Allergan, Inc. for all Defendants' acts of unfair competition;

12     N.      A preliminary and permanent injunction, pursuant to 35 U.S.C. § 1116(a),

13  enjoining Athena Cosmetics from making any false, misleading or deceptive

14  statements regarding RevitaLash and/or Latisse, including but not limited to the false

15  and misleading statements described in this complaint, and requiring Athena

16  Cosmetics to distribute corrective advertising to its distributors and customers;

17     O.      A preliminary and permanent injunction, pursuant to 35 U.S.C. § 283,

18  enjoining Athena Cosmetics, Pharma Tech, Northwest Cosmetic, Cosmetic Alchemy,

19  Stella, PI, Metics, R&G, and all persons in active concert or participation with Athena

20  Cosmetics, Pharma Tech, Northwest Cosmetic, Cosmetic Alchemy, Stella, PI, Metics,

21  and R&G from any further acts of infringement, inducement of infringement, or

22  contributory infringement of the '105 patent;

23     P.      A preliminary and permanent injunction, pursuant to 35 U.S.C. § 283,

24  enjoining Athena Cosmetics, Pharma Tech, Northwest Cosmetic, and all persons in

25  active concert or participation with Athena Cosmetics, Pharma Tech, and Northwest

26  Cosmetic, from any further acts of infringement, inducement of infringement, or

27  contributory infringement of the '404 patent;

28

Gibson, Dunn &
Crutcher LLP

Q.      A preliminary and permanent injunction, pursuant to 35 U.S.C. § 283, enjoining Athena Cosmetics, Pharma Tech, Northwest Cosmetic, R&G and all persons in active concert or participation with Athena Cosmetics, Pharma Tech, Northwest Cosmetic, and R&G from any further acts of infringement, inducement of infringement, or contributory infringement of the '029 patent;

R.      An order, pursuant to 35 U.S.C. § 284, awarding Allergan and Dr. Johnstone damages adequate to compensate Allergan and Dr. Johnstone for Athena Cosmetics', Pharma Tech's,  Northwest Cosmetic's, Cosmetic Alchemy's, Stella's, PI's, Metics',  and R&G's infringement of the '105 patent, in an amount to be determined at trial, but in no event less than a reasonable royalty;

S.      An order, pursuant to 35 U.S.C. § 284, awarding Allergan damages adequate to compensate Allergan for Athena Cosmetics', Pharma Tech's, and Northwest Cosmetic's infringement of the '404 patent, in an amount to be determined at trial, but in no event less than a reasonable royalty;

T.      An order, pursuant to 35 U.S.C. § 284, awarding Allergan and Duke University damages adequate to compensate Allergan and Duke University for Athena Cosmetics', Pharma Tech's, Northwest Cosmetic's, and R&G's infringement of the '029 patent, in an amount to be determined at trial, but in no event less than a reasonable royalty;

U.      An order, pursuant to 15 U.S.C. § 1117(a), awarding Allergan damages adequate to compensate Allergan for Athena Cosmetics' unfair competition and false advertising, in an amount to be determined at trial.

V.      An order, pursuant to 35 U.S.C. § 284, and based on Athena Cosmetics', Pharma Tech's, Northwest Cosmetic's, Cosmetic Alchemy's, Stella's, PI's, Metics', and R&G's willful and wanton infringement of the '105 patent, trebling all damages awarded to Allergan and Dr. Johnstone under the '105 patent;

Gibson, Dunn & Crutcher LLP

1   W.   An order, pursuant to 35 U.S.C. § 284, and based on Athena Cosmetics',

2   Pharma Tech's, and Northwest Cosmetic's willful and wanton infringement of the

3   '404 patent, trebling all damages awarded to Allergan under the '404 patent;

4   X.   An order, pursuant to 35 U.S.C. § 284, and based on Athena Cosmetics',

5   Pharma Tech's, Northwest Cosmetic's, and R&G's willful and wanton infringement of

6   the '029 patent, trebling all damages awarded to Allergan and Duke University under

7   the '029 patent;

8   Y.   An order, pursuant to 35 U.S.C. § 284, awarding to Allergan,

9   Dr. Johnstone and Duke University interest on the damages and their costs incurred in

10  this action;

11  Z.   An order, pursuant to 35 U.S.C. § 285, finding that this is an exceptional

12  case and awarding to Allergan, Dr. Johnstone and Duke University their reasonable

13  attorneys' fees incurred in this action;

14  AA.   An order, pursuant to 15 U.S.C. § 1117(a), finding that this is an

15  exceptional case and awarding to Allergan its reasonable attorneys' fees incurred in

16  this action; and

17  BB.   Such other and further relief as this Court may deem just and proper.

18

19  Dated: September 30, 2011

20                          T. KEVIN ROOSEVELT
                            FINLAYSON WILLIAMS TOFFER
21                            ROOSEVELT & LILLY LLP

22                          JEFFREY T. THOMAS
                            JOHN N. CARTER
23                          GIBSON, DUNN & CRUTCHER LLP

24
                            By: _____
25                                         Jeffrey T. Thomas

26                          Attorneys for Plaintiffs ALLERGAN, INC.;
                            MURRAY A. JOHNSTONE, M.D.; and DUKE
27                          UNIVERSITY

28  101112905.2

# DEMAND FOR JURY TRIAL

Allergan, Dr. Johnstone and Duke University demand trial by jury on all issues and causes of action properly tried to a jury, pursuant to Federal Rule of Civil Procedure 38.

Dated: September 30, 2011

T. KEVIN ROOSEVELT
FINLAYSON WILLIAMS TOFFER
   ROOSEVELT & LILLY LLP

JEFFREY T. THOMAS
JOHN N. CARTER
GIBSON, DUNN & CRUTCHER LLP

By: _____
     Jeffrey T. Thomas

Attorneys for Plaintiffs ALLERGAN, INC.;
MURRAY A. JOHNSTONE, M.D.; and
DUKE UNIVERSITY

101112905.2

Gibson, Dunn &
Crutcher LLP