UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. | | |

Present: The Honorable   James V. Selna

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:   Attorneys Present for Defendants:

Not Present   Not Present

**Proceedings:** (IN CHAMBERS) Order GRANTING Plaintiffs' Motion for Partial Summary Judgment as to Plaintiffs' First Claim for Relief (Docket #909 & 917)

Plaintiffs Allergan, Inc. ("Allergan") and Dr. Murray A. Johnstone ("Dr. Johnstone") (collectively, "Allergan") move for partial summary judgment against Defendant Cosmetic Alchemy, LLC ("Cosmetic Alchemy") on Allergan's First Claim for Relief pursuant to Federal Rule of Civil Procedure 56. (Claim 1 Motion, Docket No. 909.) Cosmetic Alchemy has opposed, (Claim 1 Opposition, Docket No. 939), and Allergan has replied, (Claim 1 Reply, Docket No. 966). For the following reasons, the Court **GRANTS** the motion.

I.   FACTUAL BACKGROUND[1]

Allergan is a pharmaceutical company that manufactures Latisse and Lumigan, drugs approved by the Federal Drug Administration ("FDA"). (Order Granting Plaintiff's Motion for Partial Summary Judgment Against Cosmetic Alchemy on Allergan's Fourth Claim for Relief ("UCL Order"), Docket No. 889, at 3.) Both contain bimatoprost, a prostaglandin ("PG") analog. (Id.) Certain PG analogs promote physiological changes, including hair growth. (UCL Order, at 4.) The '105 Patent, entitled "Method of Enhancing Hair Growth," was issued to Dr. Johnstone on July 17, 2001. (Statement of

---

[1] Unless otherwise noted, the facts set forth are uncontroverted. The Court discusses further factual details in its analysis below as necessary. To the extent challenged evidence is material to the Court's decision, objections are resolved as stated herein. Objections to evidence the Court does not rely on are immaterial, and the Court does not rule on them. The Court does not rely on legal conclusions presented as facts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. | | |

Undisputed Facts ("SUF") ¶ 2, Docket No. 909-1.) It claims methods for stimulating hair growth through the application of an effective amount of PG analogs having either a carboxylic acid or an ester group at the $C_1$ position of the upper chain of the PG molecule.[2] (Claim 1 Motion, at 1; SUF ¶ 3; see '105 Patent, 1:10–15, 5:36–6:18.) Pursuant to a license agreement entered into in June 2006 between Allergan and Dr. Johnstone, Allergan has the exclusive right to make, use, and vend the patented invention in the '105 Patent. (SUF ¶ 4.)

Cosmetic Alchemy, founded by Dr. Scott Wasserman in late 2007, manufactures and sells LiLash and LiBrow. (UCL Order, at 3–4.) LiLash is a drug under the Federal Food, Drug, and Cosmetic Act ("FDCA") and California's Health and Safety Code. (Id. at 9–11.) It is a clear liquid that should be applied once a day to the skin of the upper eyelid along the lash line, where the follicles are located. (Id. at 3–4; SUF ¶ 50–51.) Results "take place over a few short weeks," anywhere from two to twelve. (UCL Order, at 4; SUF ¶¶ 30, 53.) Similarly, customers are instructed to apply LiBrow "directly to the skin in those areas of the brow" where effects are desired. (SUF ¶ 54.) LiBrow must go through the skin to reach the hair follicle and should be regularly used for six to eight weeks to observe the desired effects.[3] (SUF ¶¶ 54–55.)

Dr. Wasserman founded Cosmetic Alchemy after becoming aware of the growing market for eyelash growth products.[4] (UCL Order, at 4; SUF ¶ 11.) Cosmetic Alchemy has since sold LiLash and LiBrow with the intent that customers use the products to affect a bodily function: stimulating hair growth. (UCL Order, at 9–10.) Dr. Wasserman has testified that he believes "the technology in LiLash works to create longer and fuller

---

[2] The Court has construed disputed claim terms in the '105 Patent. (See Claim Construction Order, Docket No. 446.)

[3] Cosmetic Alchemy purports to dispute these facts, which mirror the undisputed facts about how to use LiLash, but it does not actually controvert them. (See Statement of Genuine Disputes of Material Facts ("SGD") ¶¶ 54-55, Docket No. 939-1.) The objections to these facts as irrelevant, immaterial, and lacking in foundation are overruled.

[4] Cosmetic Alchemy purports to dispute this fact "to the extent Allergan mischaracterizes Dr. Wasserman's June 9, 2009 testimony." (SGD ¶ 11.) The Court rejected this same objection in the UCL Order. (See UCL Order, at 4 n.6.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. | | |

eyelashes." (Id. at 4; SUF ¶ 15.) Cosmetic Alchemy has attributed this growth effect to the PG analog contained in LiLash.[5] (UCL Order, at 4–5; SUF ¶ 16.)

LiLash and LiBrow contain the same PG analog, and LiLash has always contained the same PG analog. (UCL Order, at 4; SUF ¶ 9.) Cosmetic Alchemy has referred to the PG compound as "bimatoprost isopropyl ester" or its more technical name, "17-phenyl-18,19,20-trinor-$PGF_2\alpha$-isopropyl ester." (SUF ¶ 9; SGD ¶ 9.) This is a PG analog covered by the '105 Patent; it is depicted in the specification as Compound 2 in Table 1.[6] ('105 Patent, 11:15, 15:46.) The concentration of bimatoprost isopropyl ester in LiLash and LiBrow has ranged from .015 percent to .021 percent. (SUF ¶ 10; Analytical Reports, Brody Decl. Ex. 6–9.) Cosmetic Alchemy purchased the PG analog from Cayman Medical Company ("Cayman"). (SUF ¶ 18.) Dr. Kirk Maxey, Cayman's president, has testified that the bimatoprost isopropyl ester Cayman sold could cause eyelashes to

---

[5]Although Cosmetic Alchemy purports to dispute these facts, it does not actually controvert them and only provides non-conflicting supplementary facts in the SGD. (See SGD ¶¶ 15-16.) The Court addressed similar objections in the UCL Order, (see UCL Order, at 4-5, 9-11), and whether or not LiLash and LiBrow actually cause hair growth does not controvert the statements previously made by Cosmetic Alchemy and Dr. Wasserman.

[6]Although Cosmetic Alchemy also contends that this "may not correctly identify the specific ingredient in LiLash and LiBrow, (SGD ¶ 18), SGD ¶¶ 9 and 10 do not dispute that the compound in the products is bimatoprost isopropyl ester. The Court also previously noted that Dr. Wasserman identified bimatoprost isopropyl ester as the PG analog in LiLash. (UCL Order, at 4 n.5.) Documents relied upon by Cosmetic Alchemy also confirm that the analog is known as 17-phenyl-18,19,20-trinor-$PGF_2\alpha$-isopropyl ester and has this structure:



(See Product Information, Declaration of Anna Brody ("Brody Decl.") Ex. 4, Docket No. 909-2, at 66; see also SGD ¶ 9.) This is the same structure depicted for Compound 2 in the '105 Patent. Therefore, there is no dispute as to the compound contained in Cosmetic Alchemy's products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 07-1316 JVS (RNBx)                    Date  March 5, 2013

Title  Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al.

grow.[7] (Id. ¶ 19.)

    Over the past five years, LiLash has been promoted—through product labeling, online and print advertising, customer testimonials, communications with potential customers, and press releases—as capable of growing eyelashes. (UCL Order, at 5; SUF ¶ 29.) For example, packing materials for LiLash have proclaimed: "Your Lashes, Only LONGER!" (UCL Order, at 5; SUF ¶ 39.) A September 2007 press release proclaimed that LiLash "actually stimulates eyelash growth and promotes longer, fuller and thicker eyelashes." (SUF ¶ 31.) Cosmetic Alchemy has promoted LiLash to cancer patients who lost their eyelashes from chemotherapy.[8] (UCL Order, at 5; SUF ¶ 45.) In direct communications with customers, it has stated that "LiLash contains [PG], which is the ingredient that helps stimulate the growth and enhances the look of the lashes"; "LiBrow stimulates the growth of the hair follicles"; and "Wherever LiLash touches it is going to stimulate the growth of hair follicles."[9] (SUF ¶ 38.) Customer testimonials posted on Cosmetic Alchemy's website included statements such as: "My lashes have grown about an inch and a half!"; "Imagine my delight in LiLash. My lashes were

---

    [7]Cosmetic Alchemy purports to dispute this fact, but Dr. Maxey's testimony does not show that this characterization is "false in context." (SGD ¶ 19.) He testified that Cayman sold "17-phenyl trinor PGF 2 alpha isopropyl ester" and that because "[i]t's a good FP agonist[, it] could" cause eyelashes to grow. (Maxey Deposition, Brody Decl. Ex. 18, at 166-67.) Allergan does not contend that Dr. Maxey said the compound does cause eyelash growth.

    [8]Cosmetic Alchemy purports to dispute these facts. (SGD ¶¶ 29-45.) Although the manner in which Cosmetic Alchemy promoted LiLash is not dispositive as to whether the PG compound in LiLash actually grows hair, the Court finds that it is probative of the question and material as to indirect infringement because it was directed to customers. The Court has rejected similar objections to the promotional statements made by Cosmetic Alchemy, including the September 2007 press release. (See UCL Order, at 4-11, 5 n.13.)

    [9]Cosmetic Alchemy objects to these statements as irrelevant, immaterial, and lacking in foundation. (SGD ¶ 38.) The Court disagrees. The manner of promotion is relevant to whether the compound in LiLash can grow hair. Cosmetic Alchemy also does not dispute that it made these statements, even if it does not currently engage in this practice. (See id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
|---|---|---|---|

| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. |
|---|---|

growing back, and had never seemed so full and thick."; "Having recently completed chemotherapy for breast cancer I had lost most of my eyelashes and eyebrows. I have been using your products for about two months now and both my eyelashes and eyebrows are growing back very nicely."[10] (SUF ¶ 35; Reviews & Results, Declaration of Christopher Campbell ("Campbell Decl.") Exs. 15, 18, Docket No. 820-3, 820-4.)

Allergan moves for partial summary judgment on its First Claim for Relief against Cosmetic Alchemy for patent infringement in violation of (1) 35 U.S.C. § 271(b) for actively inducing infringement of one or more claims of U.S. Patent No. 6,262,105 ("the '105 Patent"); and (2) 35 U.S.C. § 271(c) for contributing to infringement of one or more claims of the '105 Patent. (See generally Claim 1 Motion; First Amended Complaint ("FAC") ¶¶ 58–62, Docket No. 576.) Cosmetic Alchemy has known of the '105 Patent since January 2008 and of Allergan's accusation that LiLash and LiBrow infringe on the '105 Patent since at least September 1, 2009. (SUF ¶¶ 20–23.) Allergan believes indisputable facts establish that Cosmetic Alchemy, with knowledge of the '105 Patent, makes, markets, and sells its products, LiLash and LiBrow, with the intent that they be used by its customers to stimulate hair growth. (Claim 1 Motion, at 1–2.) Cosmetic Alchemy counters that "the inherent variability within the prostaglandin class of compounds to stimulate hair growth" and lack of testing demonstrating hair growth by the LiLash Prostaglandin preclude summary judgment. (Claim 1 Opposition, at 1–2.)

## II. LEGAL STANDARD

---

[10] Cosmetic Alchemy objects to the inclusion of these statements to prove hair growth as hearsay and outdated documents. The Court disagrees. These are adoptive admissions admissible under Fed. R. Evid. 801(d)(2)(B). See, e.g., United States v. Kasz Enters., Inc., 855 F. Supp. 534, 542 (D.R.I. 1994) ("The sellers of a product, by including in their labeling and promotional literature third party claims and testimonials concerning the product, 'endorse, and thereby adopt as their own, the statements and representations of others.'" (quoting United States v. Sene X Eleemosynary Corp., 479 F. Supp. 970, 980 (S.D. Fla. 1979))). The statements also are admissible to prove Cosmetic Alchemy's intent in its marketing, and Cosmetic Alchemy does not dispute it posted these testimonials online, even if they are no longer available.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 07-1316 JVS (RNBx)     Date   March 5, 2013

Title    Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al.

      Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine issue of material fact as to that portion of the claim. Fed. R. Civ. P. 56(a), (b); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim." (internal quotation marks omitted)).

      Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (citations and internal quotation marks omitted). In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and the opposing party must produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

      The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322–23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., 210 F.3d 1099, 1103 (9th Cir. 2000).

### III.    DISCUSSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. | | |

Allergan claims Cosmetic Alchemy (1) actively induces infringement of the '105 Patent, in violation of 35 U.S.C. § 371(b); and (2) contributes to infringement of the '105 Patent, in violation of 35 U.S.C. § 371(c). These indirect infringement claims must be supported by an actionable direct infringement claim. Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1033 (Fed. Cir. 2002).

### A.    Patent Infringement Legal Standards

####   1.    Direct Infringement

When an actor commits all the elements of infringement, such as the making, using, or selling of a patented invention, that actor is liable for direct infringement under 35 U.S.C. § 271(a). Akamai Techs., Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1305, 1307 (Fed. Cir. 2012) (per curiam); see also Joy Techs. Inc. v. Flakt, Inc., 6 F.3d 770, 773 (Fed. Cir. 1993). To determine if a patent has been infringed, the court must first determine the scope and meaning of the patent claims asserted—a question of law. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc) (citation omitted). Second, the court must determine "whether the claims, as properly interpreted, cover the accused device or process"—a question of fact. SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 889 (Fed. Cir. 1998). The party must perform each and every step or element of a claimed method or product, and if any claim limitation is absent from the accused device, there is no literal infringement as a matter of law. Cephalon, Inc. v. Watson Pharm., Inc., 769 F. Supp. 2d 729, 746 (D. Del. 2011) (citations omitted); see also 692 F.3d at 1307. The patent owner has the burden of proving infringement by a preponderance of the evidence. SmithKline, 859 F.2d at 889. Direct infringement may be shown through direct and circumstantial evidence. Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1272 (Fed. Cir. 1986).

####   2.    Inducement of Infringement

35 U.S.C. § 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Two elements must be present in addition to direct infringement. First, "a patent holder must prove that once the defendant[] knew of the patent, [it] actively and knowingly aid[ed] and abett[ed] another's direct infringement." DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 07-1316 JVS (RNBx)   Date  March 5, 2013

Title  Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al.

(internal quotation marks and citation omitted). Second, the patent holder must prove that the defendant intended to cause direct infringement, that is, a defendant must induce acts by another that are known by the defendant to constitute patent infringement. Id. (citation omitted); Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2068 (2011). Accordingly, "if an entity offers a product with the object of promoting its use to infringe, as shown by clear expression or other affirmative steps taken to foster infringement, it is then liable for the resulting acts of infringement by third parties." DSU Med., 471 F.3d at 1306. Circumstantial evidence of intent may suffice. Water Techs. Corp. v. Claco, Ltd., 850 F.2d 660, 668 (Fed. Cir. 1988). Sales-related activities, including advertising, solicitation, and product instruction that encourage the infringing use may be acts constituting inducement. See, e.g., Ricoh Co. v. Quanta Computer, Inc., 550 F.3d 1325, 1340 (Fed. Cir. 2008); Veritas Operating Corp. v. Microsoft Corp., 562 F. Supp. 2d 1141, 1156 (W.D. Wash. 2008) (citations omitted).

        3.     Contributory Infringement

A seller is liable for contributory infringement if (1) it sells a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process; (2) the item sold constitutes a material part of the invention; (3) the seller knows that the item sold is especially made or especially adapted for use in an infringement of a patent; and (4) the item sold is not a staple article or commodity of commerce suitable for non-infringing use. 35 U.S.C. § 271(c). The buyer must be a direct infringer. Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 341 (1961). Thus, the patentee must prove knowledge and materiality. See DSU Med., 471 F.3d at 1303 ("DSU must have shown that ITL made and sold the Platypus, that the Platypus has no substantial non-infringing uses in its closed-shell configuration, that ITL engaged in conduct (made sales) within the United States that contributed to another's direct infringement, and that JMS engaged in an act of direct infringement on those sales that ITL made in the United States.").

      **B.**     **Whether Customer Use of LiLash and LiBrow Directly Infringes the '105 Patent**

Allergan argues that Cosmetic Alchemy's customers directly infringe Claims 1, 2, 3, 5, 6, and 7 of the '105 Patent by using LiLash and LiBrow to stimulate hair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. | | |

growth. Allergan details how LiLash and LiBrow use meets the limitations of the '105 Patent because (1) the products contain a "prostaglandin F compound," bimatoprost isopropyl ester, in concentrations ranging from .015 percent to .021 percent; (2) customers apply the products to their skin in an "effective amount" to stimulate hair growth or the conversion of vellus or intermediate hair to growth as terminal hair; and (3) the products contain a "$PGF_2\alpha$ derivative." (Claim 1 Motion, at 15–18.) Allergan also proffers Cosmetic Alchemy's advertisements, customer testimonials, statements to consumers, deposition testimony, and interrogatory responses. (Id. at 9–13.) Cosmetic Alchemy counters that there is a genuine issue of material fact as to whether bimatoprost isopropyl ester actually causes mammalian hair growth and insists that Allergan must prove this capability through testing to succeed at the summary judgment stage. (Claim 1 Opposition, at 1.) It also argues that its marketing statements, customer testimonials, and interrogatory responses do not establish that its products stimulate hair growth. (Id. at 12–20.)

Allergan alleges that Cosmetic Alchemy's customers "literally infringe the '105 Patent" by using LiLash and LiBrow. (Claim 1 Reply, at 3.) "[A]n accused product literally infringes if every limitation recited in the claim appears in the accused product, i.e., the properly construed claim reads on the accused product exactly." Jeneric/Pentron, Inc. v. Dillon Co., 205 F.3d 1377, 1382 (Fed. Cir. 2000) (citation omitted); see also Int'l Visual Corp. v. Crown Metal Mfg. Co., 991 F.2d 768, 772 (Fed. Cir. 1993) (citation omitted) ("Infringement is determined on the basis of the claims, not on the basis of a comparison with the patentee's commercial embodiment of the claimed invention" or a preferred embodiment.). Thus, the Court's analysis focuses on the language of the claims.

This chemical structure depicts LiLash Prostaglandin, also known as bimatoprost isopropyl ester or 17-phenyl-18,19,20-trinor-$PGF_2\alpha$-isopropyl ester:

[chemical structure diagram]

(SUF ¶¶ 9, 71; SGD ¶¶ 9, 71; Production Information, at 66.) This is the same chemical structure depicted as Compound 2 in the specification as a "representative derivative useful in the practice of the invention." (105 Patent, 11:9–20.) It is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. | | |

uncontroverted that the compound Cosmetic Alchemy uses is a "prostaglandin PGF compound" under the meaning of Independent Claims 1 and 5. (See Claim 1 Motion, at 15; SUF ¶ 69; SGD ¶ 69; see also '105 Patent, 25:64–26:6.) It also is undisputed that bimatoprost isopropyl ester is a $PGF_2\alpha$ derivative." (SUF ¶ 71.) The concentration of bimatoprost isopropyl ester ranges from .015 percent to .021 percent. (SUF ¶ 10.) Customers are instructed to apply LiLash and LiBrow to their skin, not their eyelashes or eyebrows. (Id. ¶¶ 50–51, 54.) Cosmetic Alchemy does not contend that this is not an "effective amount" to stimulate hair growth, assuming the compound has that capability.[11] (See SGD ¶ 68.) Dependent Claims 2 and 6 bolster the conclusion that this is an "effective amount" because they recite a concentration ranging from .0000001 percent to 50 percent by weight of the composition. ('105 Patent, 26:29–31, 27:7–9.) Customer testimonials also indicate that users experienced eyelash and eyebrow growth from using the products, indicating that the concentrations are adequate. (See SUF ¶¶ 29–39.) The use of LiLash and LiBrow therefore literally meets the limitations of the asserted claims.[12]

Cosmetic Alchemy's sole argument against infringement—that there is a genuine issue of fact because no testing proves that bimatoprost isopropyl ester stimulates hair growth—is unavailing. First, Cosmetic Alchemy presents no expert testimony or other evidence establishing or creating a reasonable inference that bimatoprost isopropyl ester cannot stimulate hair growth. Second, performance of all the steps in the patent claims suffices to prove literal infringement; a showing of actual results is not required unless a "particular result is required by [the] claims as" construed. Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368, 1378 (Fed. Cir. 2001) (noting that court construed claims only to require administration of specific amounts of paclitaxel and not achievement of a

---

[11] "Effective amount" means a dose sufficient (1) "to stimulate hair growth in a mammalian species over time with repeated applications" or (2) "to convert vellus hair or intermediate hair to growth as terminal hair over time with repeated applications." (Claim Construction Order, at 46-47.)

[12] Allergan does not attempt to prove infringement by analogizing between Latisse and Cosmetic Alchemy's products. Rather, it relies on the claim language and buttress its argument with other circumstantial evidence. This is proper and probative of direct infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 07-1316 JVS (RNBx)   Date  March 5, 2013

Title  Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al.

particular result). The Court has not construed the claim terms to require actual hair growth. Rather, like in Bristol-Myers, the Court reasoned that the preamble did not set forth any additional steps or structure to the claimed invention but did disclose the step of "[d]irect application [of a specified compound] to the surface of the skin for the purpose of growing hair." (Claim Construction Order, at 6, 7 n.1.) The claims only require application of an "effective amount," and the steps of the '105 Patent are performed in the same way regardless of whether a customer experiences hair growth. Allergan nonetheless presents evidence that customers experienced actual hair growth after using the products, and it shows that Cosmetic Alchemy marketed LiLash by proclaiming that it could stimulate hair growth. These uncontroverted facts, coupled with Dr. Maxey's testimony that the bimatoprost isopropyl ester Cayman sold to Cosmetic Alchemy could cause eyelashes to grow and Dr. Wasserman's testimony that he believes the compound "works to create longer and fuller eyelashes," are probative circumstantial evidence of infringement. Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1372 (Fed. Cir. 2009). Therefore, because Allergan must only show, as it has, that users of LiLash and LiBrow directly infringe the '105 Patent by practicing all the steps in the claimed methods, evidence of actual growth is not relevant to the literal infringement analysis.

Cosmetic Alchemy argues that the Court cannot rely on the customer testimonials or marketing statements. (Claim 1 Opposition, at 16–18.) The Court disagrees. "[T]here is no prohibition against using the admissions of a party, whether in the form of marketing materials or otherwise, as evidence in an infringement action." PharmaStem Therapeutics, Inc. v. ViaCell, Inc., 491 F.3d 1342, 1351 (Fed. Cir. 2007). In PharmaStem, which Cosmetic Alchemy relies on, the defendants' marketing statements did not represent that the "stem cells in any of the cryopreserved cord blood samples were sufficient in number to effect hematopoietic reconstitution of an adult," as required by the patent claims, so they were not substantial evidence of infringement. Id. This was in addition to other evidentiary deficiencies that amounted to a failure to show that the blood cord units stored by the defendants contained sufficient numbers of stem cells to reconstitute the hematopoietic system of a human adult. See id. at 1351–55. In contrast, the customer testimonials and marketing statements from Cosmetic Alchemy are admitted as party-opponent or adoptive admissions. The statements directly address the claim limitations pertaining to "hair growth" and are evidence that even

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. | | |

a single customer's use of one of the products caused hair growth. Such proof was lacking in PharmaStem. See 491 F.3d at 1354 ("PharmaStem has not pointed to any evidence that even a single transplanted cord blood unit from one of the defendants resulted in the successful reconstitution of the hematopoietic system of an adult."). Thus, these facts are reliable, substantial, and uncontroverted evidence of direct infringement.

Third, even if there were a functional claim limitation requiring hair growth, the law does not require Allergan to prove infringement by scientific testing. The Federal Circuit has no "general rule requiring one who alleges infringement of a claim containing functional limitations to perform actual tests or experiments on the accused product or method." Martek, 579 F.3d at 1374 (rejecting reading of Kim v. ConAgra Foods, Inc., 465 F.3d 1312 (Fed. Cir. 2006), that would require testing). Cosmetic Alchemy's reliance on Kim is misplaced. In Kim, the claim construction required that (1) the bread contain specific ingredients in specified proportions and (2) the ingredients perform essentially the same function in the production of bread as would potassium bromate—strengthen the dough, increase loaf volume, and contribute to fine crumb grain. 465 F.3d at 1317–19. The accused products contained the claimed ingredients in the claimed amounts, so the question was whether the claimed ingredients in the products satisfied the functionality limitations. Id. at 1319. Kim "simply assumed that they had the same effects on dough as did [her] patented composition," while the defendant's expert testified that the accused products' additional ingredients affected their functionality. Id. at 1320. The Federal Circuit reasoned that although the accused products contained the claimed ingredients in the claimed amounts, the "consisting essentially of" claim at issue could not be infringed as a matter of law if the accused products contained "additional, unclaimed ingredients that materially affect the basic and novel properties of the invention." Id. at 1319–20. Thus, Kim's conclusory testimony failed to prove infringement because she "presented no testimony based on the accused products themselves." Id. at 1320.

Unlike in Kim, the '105 Patent does not require actual hair growth. Further, the claimed methods are part of *comprising* claims, not "consisting essentially of" claims, rendering the reasoning in Kim generally inapplicable. Moreover, while Kim simply relied on analogies and disregarded the potential for other ingredients to affect the functionality of the defendants' product, the specific PG in Cosmetic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. | | |

Alchemy's products explicitly is identified in the '105 Patent as a representative compound. Allergan has presented evidence, including customer testimonials and deposition testimony, that it causes hair growth. Cosmetic Alchemy does not claim that other chemicals cause the hair growth from using LiLash or LiBrow, and it proffers no rebuttal expert testimony or evidence other than its own conclusory statements that bimatoprost isopropyl ester cannot cause hair growth. Thus, Allergan relies not on unsupported assumptions about the capabilities of bimatoprost isopropyl ester but on other, more probative evidence that supports a finding of direct infringement. It does not have to prove direct infringement by testing to succeed on its summary judgment motion. Martek, 579 F.3d at 1374.

Finally, the expert testimony Cosmetic Alchemy cites to does not justify denying summary judgment. Cosmetic Alchemy takes issue with the lack of testing by Timothy MacDonald, whose report concludes that "17-phenyl-trinor-PGF$_2\alpha$-isopropyl ester falls within the scopes of the asserted claims of the '105 patent." (Opening Expert Report of Timothy L. MacDonald ("MacDonald Report"), Ph.D., Declaration of Michael Dvoren ("Dvoren Decl.") Ex. 2, Docket No. 939-2, at 31.) Allergan does not rely on this report, and neither does the Court. Nonetheless, the report explains the PG compound's chemical structure and details how it literally falls within the scope of the asserted claims. (Infringement Claim Chart for U.S. Patent No. 6,262,105 B1, MacDonald Report Ex. G.) It could support a finding of infringement even without testing because MacDonald conceptually analyzed the compound and concluded that it meets the claim limitations based on its chemical composition. It certainly does not create a genuine issue as to the capabilities of bimatoprost isopropyl ester.

Cosmetic Alchemy also relies on expert reports by Drs. Valerie Anne Randall and Robert J. Noecker in a separate litigation, Allergan, Inc. v. Apotex, Inc., Civil Action No. 1:11-CV-681 (M.D.N.C.). (See Claim 1 Opposition, at 3–5; Expert Report of Robert J. Noecker ("Noecker Report"), Dvoren Decl., Docket No. 843-1 Ex. 5; Expert Report of Valerie Anne Randall ("Randall Report"), Dvoren Decl., Docket No. 843-1 Ex. 6.) These reports, which acknowledge that not all PGs can stimulate hair growth, do not create a genuine dispute as to the capabilities of bimatoprost isopropyl ester. The portions of the Noecker Report Cosmetic Alchemy relies on focus on obviousness and conclude that bimatoprost and latanoprost are not equivalent and that latanoprost's ability to generate eyelash

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. | | |

growth was uncertain at the time of the '105 Patent's invention. (See, e.g., Noecker Report, at 10–12, 16, 37.) The cited portions of the Randall Report also focus on obviousness and conclude that a person of ordinary skill in the art would not have been able to predict or foresee that any particular PG would stimulate hair growth "in view of the hair growth literature" in February 2002. (Randall Report, at 3.) This focus, as well as the very variability of the compounds that Cosmetic Alchemy believes justifies denying summary judgment, limit the reports' relevance to the direct infringement inquiry. Perhaps most importantly, neither report concludes that bimatoprost isopropyl ester, or Compound 2 in the '105 Patent, does not or cannot stimulate hair growth. In fact, bimatoprost isopropyl ester is not mentioned at all. Thus, Cosmetic Alchemy only shows that there may be "some metaphysical doubt as to the material facts" but the expert reports offer no "factual predicate from which" an inference may be drawn that bimatoprost isopropyl ester cannot stimulate hair growth. Matsushita, 576 U.S. at 586.

In sum, there is no genuine dispute of material facts as to whether the use of LiLash or LiBrow literally reads on each element of the method claims at issue. Accordingly, the uncontroverted facts establish that Cosmetic Alchemy's customers directly infringe the '105 Patent as a matter of law, establishing the predicate element for indirect infringement.

### C. Whether Cosmetic Alchemy Actively Induces & Contributes to Infringement

The Court next addresses whether Cosmetic Alchemy is liable for indirect infringement of the '105 Patent. The Court concludes that there is no genuine dispute that Cosmetic Alchemy actively induces and contributes to infringement, entitling Allergan to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322–23.

#### 1. Inducement of Infringement

The evidence establishes that no "reasonable jury could return a verdict for" Cosmetic Alchemy on the inducement claim. Anderson, 477 U.S. at 248. First, it is undisputed that Cosmetic Alchemy has known of the '105 Patent since January 2008 yet continues to sell LiLash and LiBrow to consumers. (SUF ¶ 20.) Second,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. | | |

although not admissions, the interrogatory responses ostensibly concede indirect infringement assuming the predicate direct infringement is established.[13] (See SUF ¶¶ 24–25; Claim 1 Motion, at 8, 14.) Third, the uncontroverted facts show inducement. Cosmetic Alchemy intends for LiLash and LiBrow to grow eyelashes and eyebrows and has never removed the PG analog that Dr. Wasserman believes works to create longer and fuller eyelashes (or, by extension, eyebrows). (UCL Order, at 4; SUF ¶ 15.) Advertisements proclaimed there is "no prescription needed" for LiLash, which is "intended to evoke Latisse," and packaging materials stated, "Your Lashes, Only LONGER!" (UCL Order, at 9.) Responses to customer inquiries confirmed that the products "stimulate the growth of hair follicles." (SUF ¶ 38.) Customer testimonials Cosmetic Alchemy once posted on its website establish customers purchased LiLash and LiBrow to get longer, fuller, and thicker lashes and eyebrows. (See SUF ¶¶ 35, 36.) Cosmetic Alchemy also instructs LiLash and LiBrow users to apply the product regularly to the skin of the upper eyelid along the lash line or areas of the brow, respectively, which the Court finds indicates an intent to "change" the hair overtime, not immediately affect appearance. (UCL Order, at 9.)

Thus, the undisputed facts show that Cosmetic Alchemy, through its advertisements, communications with customers, product instructions, and sales, intends to induce and does induce customers to follow each step of the patented

---

[13] The Court may consider interrogatory responses for summary judgment, although they are not a binding answer or admission. See, e.g., Victory Carriers, Inc. v. Stockton Stevedoring Co., 388 F.2d 955, 959 (9th Cir. 1968). Cosmetic Alchemy's responses do not create a genuine issue as to indirect infringement because they do not conflict with other answers from other questioning. See id. ("When there is conflict between answers supplied in response to interrogatories and answers obtained through other questioning, either in deposition or trial, the finder of fact must weigh all of the answers and resolve the conflict.") The responses also do not create a genuine issue as to direct infringement because they do not deny that the products may directly infringe and generally are conclusory. See FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("[A] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1316 JVS (RNBx) | Date | March 5, 2013 |
| Title | Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al. | | |

methods in the '105 Patent, resulting in direct infringement.[14] See Ricoh, 55o F.3d at 1340; DSU Med., 471 F.3d at 1306. Accordingly, Allergan is entitled to judgment as a matter of law for indirect infringement under 35 U.S.C. § 271(b).

      2.    Contributory Infringement

Similar evidence establishes that there is no genuine dispute of material fact precluding summary judgment on the contributory infringement claim. The undisputed facts show that Cosmetic Alchemy sells LiLash and LiBrow, products containing bimatoprost isopropyl ester, a material for use in practicing a patented method (stimulating hair growth). Further, this PG analog, which is identified in the patent specification, is a material part of the invention and necessary for the method to work. Cosmetic Alchemy also knows that this PG analog and its products are made or especially adapted for use in infringing the '105 Patent. Finally, because the products must be applied directly to the hair follicles and do not produce results for at least a couple of weeks, they are not designed to immediately affect the appearance of eyelashes instead of inducing actual hair growth. Thus, LiLash and LiBrow have no substantial non-infringing use in their present form and composition. This conduct amounts to contributory infringement. See DSU Med., 471 F.3d at 1303. Accordingly, Allergan is entitled to judgment as a matter of law for indirect infringement under 35 U.S.C. § 271(c).

IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Allergan's motion for partial summary judgment on the first claim for relief for indirect patent infringement.

IT IS SO ORDERED.

---

[14] Given Cosmetic Alchemy's previous actions, any disclaimer that LiLash is intended only to make eyelashes "look" or "appear" longer is simply "linguistic game-playing" that cannot create a genuine issue as objective intent. (See UCL Order, at 10-11; Kasz, 855 F. Supp. at 543.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-1316 JVS (RNBx)                                    Date   March 5, 2013

Title   Allergan, Inc., et al. v. Athena Cosmetics, Inc. et al.

                                                                    0    :    00
                                            Initials of Preparer    kjt